BARTZ, Receiver, Respondent, vs. PAFF, Executor, imp., Appellant.

BARTZ, Receiver, Appellant, vs. PAFF, Executor, and others, imp., Respondents.

*November 10, 1896 — February 2, 1897.*

*Vendor and purchaser: Specific performance: Lien of judgment: Trust: Notice.*

1. The fact that a parol contract for the sale of land, to be paid for out of the proceeds of the timber, does not specify any time for the payment of the purchase money, does not render it so uncertain as not to be enforceable in equity, but the money is payable on demand.

2. Where several parcels of land are included in one parol contract of sale, part payment of the purchase money and a delivery of possession of one of those parcels, is sufficient to enable the purchaser to enforce specific performance of the contract as to all the parcels.

3. Such a purchaser has an equitable title to the land, though the legal title remains in his vendor; and a judgment duly docketed against the purchaser attaches as a lien upon his equitable title; and is good as against all persons except purchasers in good faith, without notice of the lien. CASSODAY, C. J., dissenting, holds that actual knowledge of the rendition of the judgment should be held no less potential in equity than actual knowledge of the docketing.

4. The vendor, in such a case, holds the title, to the extent of the purchase money paid, as trustee for those beneficially interested therein; first for any creditor of the purchaser who has obtained a judgment lien thereon, and then for such purchaser.

5. If such vendor, by direction of the purchaser, sells and conveys a part of the land to a third party who buys in good faith and without notice of the judgment lien, the title will pass to him free from the lien, and the trust will attach to the purchase money in the hands of the vendor, and he will be liable to account therefor as trustee, if he pays it over to the original purchaser, unless he does so without knowledge of the existence of such judgment lien. CASSODAY, C. J., dissenting, holds that the amount received by the vendor on such sale should be applied as payment on the purchase money due him from the original purchaser, thus increasing the lien upon the remainder of the land.

6. The docketing of a judgment is not notice, at common law, to anybody dealing with the judgment debtor, nor is it made so by any statute of this state.

APPEALS from a judgment of the circuit court for Marathon county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of the defendant.*

Action by the receiver of a judgment debtor to reach certain property in which the debtor had an interest, and subject it to the satisfaction of the judgment.

This cause was commenced against Jacob Paff and others. Subsequently he died, and the cause was duly revived against his representative. The complaint, by appropriate allegations, sets forth that in March, 1883, a cause of action for damages accrued to Edward Meier against defendant Henry Paulus, growing out of negligent treatment by the latter of the former while he was under the care of Paulus, as superintendent of the Marathon county poorhouse; that in 1886 an action was commenced in the circuit court for Langlade county, Wisconsin, to recover damages for such negligent treatment; that such action was prosecuted in the circuit court and in the supreme court till judgment was finally rendered in Meier's favor, and against Paulus; that the judgment was docketed in Langlade county on the 20th day of September, 1889, and in Marathon county on the 26th day of September, 1889. The complaint further sets forth that, after the cause of action accrued, defendant Paff con-

tracted to sell eighty acres of land in Marathon county to
Paulus for $10 an acre, and eight per cent. interest per annum
thereon till paid; that said contract was made with the under-
standing that Paff should retain the title, in order to hinder
and delay the satisfaction of Meier's claim; that Paulus
went into immediate possession of the land, and thereafter,
on the 21st day of October, 1890, sold forty acres thereof to
defendant *Herman Lemke* for $500; that Paff made the
requisite conveyance, and Paulus received the consideration;
that prior thereto ten acres of the land were sold, the con-
veyance made, and consideration passed in the same manner;
that the remainder of the land was largely paid for, but that
the title remained in Paff; that such dealing was pursuant
to a fraudulent agreement and purpose to defeat Meier in
the collection of his claim, participated in by both Paff and
*Lemke.*

The complaint further sets forth that, after the rendition
of the judgment, such proceedings were duly had for the
collection thereof that plaintiff was appointed receiver of
the property of Paulus; that he then brought this action to
have the title to the land decreed to have been in Paulus
from the date of his contract with Paff, and to have the
deed to *Lemke* declared void as to plaintiff, or, if that could
not be done, for judgment for damages against Paff.

The defendants answered, putting in issue all allegations
of fact made to charge them on the ground of fraud.

The trial resulted in finding, among other things, the ex-
istence of all the facts alleged in the complaint respecting
Meier's claim, judgment, and the appointment of the re-
ceiver; also, that in 1884 or 1885 Paff made a verbal con-
tract with Paulus to sell to the latter the land mentioned in
the complaint, for the price there alleged, Paulus to have the
privilege to take timber therefrom and sell the same, paying
the proceeds, as received, to Paulus, to apply on the pur-
chase money; that Paulus entered upon the land, made im-

provements thereon, and paid of the purchase money $400; that two parcels of the land were sold, deeded, and the consideration passed to Paulus, as alleged in the complaint, save and except the sum of $70 retained by Paff, for interest, out of the first sale of ten acres; that Paff knew at the time of the sale to *Lemke* of the judgment against Paulus, and had constructive notice of the docketing of the same in Marathon county; that *Lemke* purchased in good faith, without notice that Paulus had any interest in the land.

The effect of the findings on this point is that *Lemke* supposed Paulus was merely acting as agent of Paff in making the sale. The court further found that Paulus had an enforceable contract for the land at the time Meier's judgment was docketed in Marathon county; that such judgment, from that time, was a lien thereon; that plaintiff was not entitled to any relief against *Lemke;* that *Paff* was liable to account, to plaintiff for the $500 received from *Lemke*, and was liable for costs; and that *Lemke* was entitled to costs against the plaintiff. Exceptions were filed sufficient to preserve for review the questions considered in the opinion. Judgment was entered according to the findings.

Plaintiff appealed from that part of the judgment decreeing *Lemke* a purchaser in good faith, without notice of Paulus' interest in the land, and from the judgment for costs in *Lemke's* favor. Defendant *Paff* appealed from the judgment against him for $500 and costs.

For the plaintiff there were separate briefs by *Brown & Pradt* and *Mylrea, Marchetti & Bird*, and oral argument by *Neal Brown*. To the point that the contract was enforceable though uncertain as to time, they cited *District No. 3 v. Macloon*, 4 Wis. 79; *Britton v. Erickson*, 80 id. 466, 468; *Kusel v. Watson*, L. R. 11 Ch. Div. 129.

For the defendants, the case was submitted on the briefs of *Silverthorn, Hurley, Ryan & Jones*. They contended that the contract for the sale of land was rendered so uncertain

by its terms as to time of payment that it could not be enforced in equity by either party, or by a creditor of the purchaser, and that no title passed under it. *Williams v. Stewart*, 25 Minn. 516; *Nichols v. Williams*, 22 N. J. Eq. 63; *Potts v. Whitehead*, 20 id. 60; *Port Jervis, M. & N. T. R. Co. v. N. Y., L. E. & W. R. Co.* 10 N. Y. Supp. 852; *Burnett v. Kullak*, 76 Cal. 535; *Diamond State Iron Co. v. Todd*, 6 Del. Ch. 163.

The following opinion was filed November 24, 1896:

MARSHALL, J. The first question in order in the discussion of this case is, Was the contract between Jacob Paff, deceased, and Henry Paulus so far executed as to render it enforceable in equity?

It does not appear that there is any controversy respecting what the contract was in fact. The only objection raised to its enforcement appears to be that it was indefinite in respect to the time of payment for the land. The price per acre was agreed upon. The vendee was put in possession of the premises, and he continued in such possession from the making of the contract, in 1884 or 1885, down to the commencement of this action. In the meantime he made improvements and paid half the purchase money.

No time being specified for payment of the purchase money, it was payable on demand. Therefore there was no element of uncertainty in that. The rule is that part payment of the purchase money, and delivery of possession of one of the parcels of land included in the parol contract, are sufficient to enable the purchaser to enforce specific performance as to all the parcels. *Jones v. Pease*, 21 Wis. 645; *Dist. No. 3 v. Macloon*, 4 Wis. 79; *Brandeis v. Neustadtl*, 13 Wis. 142; *Docter v. Hellberg*, 65 Wis. 415. It follows that the conclusion of the trial court on this branch of the case cannot be disturbed.

Paulus being the equitable owner of the land, the judg-

ment against him attached as a lien on such interest, good as against all persons except purchasers in good faith without notice, as soon as the same was docketed in Marathon county.

The trial court found that *Lemke* purchased and paid for the forty acres without notice that Paulus had any interest therein, and in good faith believing that the land belonged to Paff; therefore, that he took title thereto under the Paff deed, discharged from the lien of the judgment. The findings of fact, in that regard, appear to be sustained by the evidence. Therefore the conclusion of law based thereon followed as a matter of course.

The important question to be determined is whether Paff is responsible or not for the purchase money paid to him by *Lemke* and turned over to Paulus. So far, at least, as the purchase money had been paid to Paff on his contract with Paulus, he held the title to the land as trustee for those beneficially interested, first as trustee for Meier, who was entitled to first lien thereon under his judgment, then for Paulus, the equitable owner, subject to such judgment. *Winslow v. Crowell*, 32 Wis. 639; *Church v. Smith*, 39 Wis. 492. If actual notice of the existence of the judgment had been brought home to Paff prior to the conveyance to *Lemke*, the relation between him and the judgment creditor would have been precisely the same as in *Church v. Smith*, though created in a somewhat different manner. There this court held that the *cestui que trust* had such an interest in the land that he was entitled to come into a court of equity and enforce the execution of the trust.

Such is really the nature of this action as between plaintiff and Paff. It was to enforce a trust, or, if the trust could not be enforced, by reason of a violation of duty on the part of the trustee, then for damages for such violation, and it was and is governed by the law respecting that subject. The damages, if any, for which Paff was liable to plaintiff,

representing the judgement creditor, grew out of some vio-- lation of duty on the part of the former which he owed to the latter. The transfer of the forty acres to *Lemke,* a *bona fide* purchaser for value without notice, and the payment of the consideration to Paff, were effectual to remove the lien of the judgment from that part of the land. The same act that removed the lien from the land transferred such lien to the fund in the hands of the trustee, under the general rule that no change in form of the trust property effected by the trustee will impede the rights of the beneficial owner to reach it and to compel its transfer, provided it can be identified as a distinct fund.

If the proceedings had been instituted against Paff to charge him as trustee, while he retained the fund in his hands, obviously he would have been liable to account for it; and if it were found that, with notice of the existence of the judgment, he parted with the fund, he would have been liable to respond in damages as for a breach of trust. 2 Pomeroy, Eq. Jur. § 1058; *Lathrop v. Bampton,* 31 Cal. 17; 2 Story, Eq. Jur. § 1232.

The difficulty in this case grows out of the fact that Paff did not know of the judgment lien when the transaction with *Lempke* took place. The judgment had been docketed, but that fact was not known to Paff, and the court expressly acquits him of participation in any fraudulent scheme to defeat the collection of the judgment; hence, there is no principle of law upon which he can be held liable in damages for a breach of trust, unless the law is that one so circumstanced is required, before paying the money received from the vendee to the equitable owner, to examine the records and to investigate respecting whether there is any lien upon the land or not.

No duty can exist without knowledge of the facts, or knowledge sufficient, at least, to put one on inquiry which will lead to a discovery of the facts, upon which such duty rests. The rule respecting the subject is laid down with clear-

ness in Freeman, Judgments, § 349, as follows: "If the trustee sells and conveys the land clear of the lien, the proceeds of the sale, while in his hands, are subject to the lien; but he is not bound to search the records, and therefore is relieved from all liability if, without knowledge of the existence of any judgment on the property, he pays over the money without regard to such lien." This seems to accord with reason and common sense, when applied to the practical affairs of life. If such be not the law, then, as before stated in effect, no trustee of the title to land is safe in executing his trust by selling the interest of the *cestui que trust* by authority of the latter and parting with the proceeds for his benefit, without searching the records for information respecting any judgment lien that may rest on the equitable interest of the beneficial owner; and if he sells such interest, with or without notice of such judgment lien if one exists, he is liable to account to the judgment creditor, or to respond to him in damages, as for an abuse of trust.

We may safely venture the assertion that no authority can be found anywhere to charge a person as trustee of a fund after he has parted with it, or to hold him personally liable in damages for a breach of trust, without bringing home to him knowledge of the existence of the trust relation to which he is a party, before the alleged breach.

The question under consideration was expressly decided in *Cook v. Dillon*, 9 Iowa, 407, 74 Am. Dec. 354, in the following language, in substance: Money that comes into the hands of a trustee under such circumstances is subject to the lien of the judgment, and such lien is enforceable in equity; but, if the money is paid over without knowledge of the lien, the trustee will not have to account for it again, or to be under any liability therefor. It is not his duty to search and make inquiry respecting the existence of such lien, but it devolves upon the person holding the lien to give notice of and enforce it.

Applying the foregoing to this case, the judgment against

Paff for $500, received from *Lemke* and paid over to Paulus in ignorance of the lien of the judgment, is inequitable, and opposed to well-established principles of law. The learned circuit judge fell into the error of holding that Paff committed a breach of duty which he owed to the judgment creditor, by assuming that the mere docketing of the judgment charged the former with notice of it. The docketing of a judgment is not notice, at common law, to anybody dealing with the judgment debtor (Kerr, Fraud & M. 267), and certainly it is not by any statute of this state. With that element out of the case, Paff stands entirely innocent of any wrong to the judgment creditor, Meier. The learned circuit judge so found, in the following words, which we quote from his opinion: "I acquit Mr. Paff of any fraudulent motive or intent, or of any design to assist Paulus in defrauding his creditors."

As it appears from the record that Paff made no defense in the court below to the enforcement of the contract between him and Paulus, so as to render the judgment an effectual lien upon the remaining land, the judgment against him for costs, as well as for the damages, must be reversed, and judgment be entered in the court below in his favor for costs.

*By the Court.*— On the appeal of *William A. Paff*, as executor, etc., the judgment of the court below, for $500 and costs, is reversed; and on the appeal of *G. D. Bartz*, receiver, the judgment of the court below in favor of *Herman Lemke* is affirmed. The cause is remanded, with directions to render judgment in accordance with this opinion, in favor of *William A. Paff*, as executor, against *G. D. Bartz*, receiver, for costs to be taxed according to law. Costs are awarded against the receiver, in this court, on both appeals.

CASSODAY, C. J. I concur in the reversal, but not in the reasons given therefor, or the mandate of the court. It

appears from the findings of the trial court, in effect, that the judgment recovered against Paulus and docketed, as mentioned in the opinion filed, was for $2,521.45; that, prior to the commencement of this action, execution was issued thereon to the sheriff of Marathon county, and by him returned wholly unsatisfied; that the plaintiff was duly appointed receiver, and thereupon filed this creditors' bill; that, as early as 1885, Paulus entered upon the land in question, cut timber and firewood thereon, cleared three or four acres, built a fence around the clearing, built a small building on said land in which to stable his horses, and paid taxes on said land from year to year, as the same became due; that, prior to 1889, Paulus had paid to Paff, from time to time, the sum of $400 on the purchase price of the land, besides some interest; that July 27, 1889, Paulus sold ten acres of the land to one Zeich for $300, and, by agreement with Paulus, Paff deeded the ten acres to Zeich, and $70 of this purchase price was paid to Paff upon interest due upon the contract, and the remainder was used by Paulus to pay notes upon which Paff was an indorser, given in part for money used by Paulus in carrying on the Meier litigation, and was so known by Paff; that, when Paff conveyed the forty acres to *Lemke*, the said " *Lemke* paid to said Paff the sum of $500," as the purchase price thereof, " which money was by said Paff turned over to  .  .  .  Paulus;" that Paff then and there elected to hold the balance of the purchase money due him from Paulus against the remaining thirty acres of the land, instead of taking it out of the $500 so received by him from *Lemke;* that at that time there was due from Paulus to Paff, upon the purchase price of said land, only the sum of $400 and interest from June 14, 1889; that, from a time prior to the rendition of said judgment, Paulus was insolvent, and had no property, real or personal, out of which said judgment could be satisfied, except the interest he had in the lands mentioned, and that these facts

were known to Paff, who knew of the existence of the suit by Meier against Paulus, and what it was for, and the rendition of the judgment therein, about the time it was entered, and had constructive notice of the docketing of said judgment in Marathon county at the date thereof.

Our statute declares that "every such judgment, when so docketed, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property in the county where the same is docketed, except the homestead," etc., of "every person against whom such judgment shall be rendered and docketed, and which he may have at the time of docketing thereof in the county in which such real estate is situated, or which he shall acquire at any time thereafter within said period of ten years." Sec. 2902, R. S.; *Moore v. Smead*, 89 Wis. 567. The statute also declares that "the word 'land' or 'lands,' and the words 'real estate' and 'real property,' shall be construed to include lands, tenements and hereditaments, *and all rights thereto, and interests therein.*" Subd. 9, sec. 4971, S. & B. Ann. Stats. The statute thus making the judgment a lien uses substantially the same language as the statute giving a mechanic's lien. Sec. 3314, R. S. Paulus, being thus in possession of the seventy acres at the time of the rendition and docketing of the judgment against him, and having previously made valuable improvements thereon and paid one half of the purchase price and interest, as mentioned, thereby became the legal owner of a substantial interest in the land, whereby he, or any one succeeding to his interest in the land, might have compelled Paff to specifically convey the remaining title upon payment of the unpaid purchase price. That such specific performance might have been enforced is conceded in the opinion filed, and authorities are there cited in support of the proposition. See, also, *McWhinne v. Martin*, 77 Wis. 182; *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 57, 58, and cases there cited. The reason for the rule is that

by such possession, payment, and improvements, the contract ceased to be executory merely, and became so far executed as to operate as a fraud on the vendee to allow the vendor to repudiate the same, and hence he is estopped from doing so. *Id.*

The question recurs whether, under our statutes, the judgment so docketed became a lien upon such interest of Paulus in the land. The opinion filed seems to go upon the theory that the title to the land was wholly in Paff, who held the same in trust for Paulus and those rightfully claiming under him, and that Paulus had a mere equitable interest in the land, to which the judgment did not attach as a lien, and which could be enforced only against those having actual knowledge, not only of the existence of the judgment, but that it had been docketed.

Upon that theory, it is difficult to perceive why actual knowledge of the rendition of the judgment should be less potential *in equity* than actual knowledge of such docketing. While the relation of vendor and vendee may be as indicated where the contract is purely executory and no provision is made as to the time when the title shall pass, and hence where the vendor is actually or presumptively in the possession of the land, yet, in my judgment, it has no application to the facts found in the case at bar. 28 Am. & Eng. Ency. of Law, 105–122. As indicated, the principles of law governing this case are those applicable to a case where the vendee has for several years been in the actual possession, made valuable improvements, and paid a considerable portion of the purchase price. The rule is elementary that "If the vendee is in possession, he is treated as owner of the property. He may mortgage it, or create an easement upon it. The estates or rights thus created are complete as against himself, but are liable to be defeated by the assertion of the vendor's rights, if they have been infringed upon." 28 Am. & Eng. Ency. of Law, 122, and cases there cited.

Bartz vs. Paff and others.

A learned author cited by my Brother MARSHALL in the opinion filed says: "We have already shown that the lien of a judgment attaches to the *real*, as contradistinguished from the *apparent*, interest of the judgment debtor. It follows from this rule that, upon the recovery and docketing of a judgment against a vendor *or a vendee*, the interest which may pass by any sale made to render such lien available will be governed, if the lien is against the vendee, by the proportion of the purchase money paid by him; and, if it is against a vendor who retains the legal title, by the proportion of the purchase money remaining unpaid. In other words, the purchaser under a lien against a vendee will be entitled to a conveyance from the vendor upon precisely the same terms which would have been open to the vendee under the contract, and a purchaser under a lien against a vendor will be compelled to make a conveyance to the vendee upon precisely the same terms upon which the vendor could have been compelled to convey. In all cases a purchaser at a sale under a judgment succeeds to the rights and responsibilities of the judgment debtor, and to no other." Freeman, Judgments, § 363, where numerous adjudications are cited in support of the propositions.

This court has repeatedly sanctioned the principles thus stated. *Van Camp v. Peerenboom,* 14 Wis. 65; *Bates v. Campbell,* 25 Wis. 613; *Coe v. Manseau,* 62 Wis. 81; *Lillie v. Dunbar,* 62 Wis. 198; *Galloway v. Hamilton,* 68 Wis. 651. See, also, *Noyes v. Hall,* 97 U. S. 34; *Floyd v. Harding,* 28 Grat. 401; *Jackson v. Scott,* 18 Johns. 94; *Jackson v. Parker,* 9 Cow. 73; *Rand v. Garner,* 75 Iowa, 311; *Pugh v. Good,* 3 Watts & S. 56; *S. C.* 37 Am. Dec. 534. Thus, in *Van Camp v. Peerenboom, supra,* it was held, in effect, that where a person, having a contract for the purchase of land under which he had gone into possession, conveyed the land by warranty deed, with covenant of seisin, his grantee acquired an interest in the land which was subject to the lien of a judgment

Bartz vs. Paff and others.

against him, and to a sale on execution, even where such grantee had conveyed back to his grantor, who thereupon contracted to convey to the respondent. In that case Mr. Justice Cole said: "The statute made the judgment a charge upon the real estate belonging to Anselmas at the time of its rendition, and the words 'real estate' are very comprehensive, sufficiently so to include his interest acquired by the conveyance from the appellant." And he there cites cases from New York to the effect "that even possession of lands is an interest which may be sold on an execution against the possessor," and "also that a person in the possession of land under a contract for the purchase and sale of it had an interest therein which might be sold on execution," except where the statute otherwise enacted. In some of the cases cited, bare possession was held to constitute an interest in lands sufficient to sustain ejectment against a mere wrong-doer. In *Coe v. Manseau, supra*, it was held that "actual possession of the vendee under an unrecorded contract for the sale of land is sufficient to put all persons upon inquiry as to his rights, and they are chargeable with that knowledge of the vendor's title which they would have obtained by such inquiry." *Church v. Smith*, 39 Wis. 492, cited in the opinion filed, is not in conflict with, but supports, the views here expressed. It was there held, in effect, that the vendor in such contract "holds the legal title *as security for the unpaid purchase money*," and that, if he transfers to another the notes given for such unpaid purchase price, he still "holds the legal title in trust for the security of his assignee."

The judgment in the case at bar was, under our statute, a lien at law upon Paulus' interest and right to the seventy acres, subject only to the payment of the balance of the purchase money, which, as found, was less than $500. *Lemke*, as a *bona fide* purchaser, was held to have obtained title to the forty, relieved of the lien, because the possession of

Paulus of that forty was not open and notorious.    But neither Paulus nor Paff, nor both of them together, could diminish such interest and rights acquired by the plaintiff by virtue of such lien.   When *Lemke* paid the $500 to Paff, as found by the trial court, it necessarily operated as full payment of all there was due to him from Paulus on the contract, and left the judgment a lien on the remaining thirty acres, free from any further claim on the part of Paff.

A motion by the plaintiff to correct the judgment so as to make the same payable out of the funds in the hands of *G. D. Bartz* as receiver was granted January 12, 1897.

A motion by the plaintiff for a rehearing was denied February 2, 1897.