BRITANNIA MINING CO., RESPONDENT, *v.* UNITED STATES FIDELITY & GUARANTY CO., APPELLANT.

(No. 2,950.)

(Submitted March 10, 1911. Decided March 22, 1911.)

[115 Pac. 46.]

*Sheriffs—Execution Sales—When Wrongful—Liability of Surety —Mining Machinery—When Realty—Levy—When Unnecessary—Negative Pregnant.*

Sheriffs—Sale of Realty as Personal Property—Mining Machinery—Liability of Surety.

　　1.　In selling mining machinery under an execution as personal property, upon five days' notice only, instead of as real property on notice

of twenty days, defendant sheriff violated the provision of section 6828, Revised Codes, and subjected himself and his surety to the penalty prescribed by section 6829.

Sheriffs—Execution—When Levy Unnecessary.

2.   Mining machinery, being deemed affixed to the mine, is real property; a judgment becomes a lien upon it from the time it is docketed; hence, after docketing of such judgment, a formal levy of execution was unnecessary to bring the property within custody of the law.

Pleadings—Denial—Negative Pregnant.

3.   The allegation in an answer denying that defendant has any knowledge or information sufficient to form a belief that plaintiff company "is now or at any of the times in said complaint mentioned was duly, or at all, organized or existing under or by virtue of the laws of the state of Wisconsin," etc., was a negative pregnant, and did not raise any issue as to the corporate existence of plaintiff.

New Trial—Grounds—Insufficiency of Evidence.

4.   Where, by the undisputed evidence, plaintiff was entitled to some amount, a general verdict for defendant was not supported by the evidence, and the granting of a new trial was proper.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by the Britannia Mining Company against the United States Fidelity and Guaranty Company. A verdict was rendered for defendant, and from an order granting a new trial, defendant appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief. *Mr. J. Bruce Kremer* argued the cause orally.

The levy in the action of *Nickey* v. *Britannia Min. Co.* was made while Quinn's first official bond was in force and effect, and the sale complained of was made while the second official bond was in force and effect, and during the second term of his office as sheriff. It also appears that the bond sued on is the bond in force during the second term and not the one in force when the levy was made. We contend that the bond sued on is not the bond upon which liability, if any, attaches, but if any liability attaches at all, it is upon the bond in force during the time when the levy was made. (Stearns' Law of Suretyship, sec. 174; *Baker* v. *Baldwin,* 48 Conn. 131; *Larned* v. *Allen,* 13 Mass. 295; *Wooddell* v. *Bruffy's Heirs,* 25 W. Va. 465; *Elkin* v. *People,* 4 Ill. (3 Scam.) 207; *Governor* v. *Eastwood,* 12 N. C. 157; *People* v. *McHenry,* 19 Went. 482; *Tyree* v. *Wilson,* 9 Gratt. 59, 58

Am. Dec. 213; *People* v. *Kendall,* 14 Colo. App. 175, 59 Pac. 409; *State* v. *Hamilton et al.,* 16 N. J. L. 153; *Marney* v. *State,* 13 Mo. 8; *Colyer* v. *Higgins,* 1 Duval (Ky.), 6, 85 Am. Dec. 601; *State* v. *John Roberts et al.,* 12 N. J. L. 114, 21 Am. Dec. 62; *State* v. *Turner,* 8 Gill & J. (Md.) 125; *Campbell* v. *Cobb,* 34 Tenn. 18.) The gravamen of the alleged wrongful acts of Quinn as contended for by plaintiff is the alleged wrongful sale, whereas, as a matter of fact, if there was any dereliction in official duty, it was in making the levy and in giving what is claimed to have been a notice of sale for only five days instead of twenty. The wrong, if any, therefore, having been done under the first bond, any official liability began to exist at that time. (Freeman on Executions, sec. 106.) If there were any failure on the part of the sheriff to comply with the terms and obligations of the bond, it had its inception from the time Quinn levied upon real property as personal property. (*Whitney* v. *Preston,* 29 Neb. 243, 45 N. W. 619; see, also, *Frink* v. *Roe,* 70 Cal. 305, 11 Pac. 820.)

The general rule is that corporate existence may be proved by production of the charter followed by proofs, acts done under it and in conformity with it. (*Town of Mendota* v. *Thompson,* 20 Ill. 197; *Penobscot Boom Corp.* v. *Lamson,* 16 Me. 224, 33 Am. Dec. 656.) But evidence of the passage of an Act incorporating a company, and that certain persons are doing business under the corporate name, is insufficient to prove that the corporation has been organized under the Act. (*State* v. *Murphy,* 17 R. I. 698, 24 Atl. 473, 16 L. R. A. 550.) Under the rule laid down in the case of *Milwaukee Gold Extraction Co.* v. *Gordon,* 37 Mont. 209, 95 Pac. 995, we submit that there was no adequate or sufficient proof of corporate evidence, and hence the verdict was proper.

Can the defendant surety company be held liable for the acts of Charlton, who, plaintiff contends, became the purchaser at the alleged sale and committed the acts of breaking the machinery and removing the same, which resulted in plaintiff's damage, if any? The following authorities answer this query in the negative: *Fullam* v. *Stearns,* 30 Vt. 443; *Stewart* v. *Nunemaker,*

2 Ind. 47; *King* v. *Cook,* 4 Ill. App. 525; *Snell* v. *State,* 32 Tenn. 344; *Ferrin* v. *Symonds,* 11 N. H. 363.

*Mr. W. A. Pennington,* appearing in behalf of Respondent, submitted a brief and argued the cause orally.

Appellant cites a number of early decisions in support of its contention that the cause of action is upon the bond for the first term.    Among these is the case of *People* v. *McHenry,* 19 Wend. (N. Y.) 482.    That decision was made under a statute containing a direct and positive command to a retiring sheriff to execute all writs in his possession at the close of his term, as the decision on page 486 clearly states.    The same is true of the case of *People* v. *Kendall;* 14 Colo. App. 175, 59 Pac. 409.    It is difficult to see the value of such authorities under our statutes, which compel the retiring sheriff to turn over all his writs, papers and·unearned fees to his successor.    In the case of *Colyer* v. *Higgins,* 1 Duval (Ky.), 6, 85 Am. Dec. 601, cited by appellant, the court followed the early common law of England, where there was no such thing as sale of real estate, and where as stated in Freeman on Executions, section 106, the officer who entered upon the execution of the writ, "had a special property in the goods seized."    It is safe to say that not one of the decisions cited by appellant was made under statutes similar to ours, requiring the retiring sheriff to surrender up all papers, and unearned fees, and providing a summary manner for enforcing these requirements, or under a statute such as ours fixing the penalty and damages upon the officer who *sold* without the notice provided by law.

A denial of corporate existence such as the denial in defendant's answer has been held insufficient to raise any issue as to corporate capacity.    (*Wright* v. *Fire Ins. Co.,* 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211; *McCormick Harvesting Machine Co.* v. *Hovey,* 36 Or. 259, 59 Pac. 189.)    In both these cases the denial only went to the organization and existence of the. plaintiff under the laws of the state or country named, and was an admission of organization and existence under the laws of some other state, territory, country or Act of Congress.

The sheriff received and acted under a writ which recited that the judgment was rendered against the "Britannia Mining Company, a corporation," and it commanded him to satisfy the judgment out of the property of "the Britannia Mining Company, a corporation." The return of the sheriff attached to the execution shows that he did sell the property of the defendant therein, plaintiff herein, which property is described in the return. This is at least *prima facie* evidence of plaintiff's corporate existence against his surety. This rule seems to be universal, and in case of principal and surety the only limitation upon it is that the act, admission or official report, or return must have been in connection with the business out of which the default or liability arose, and to cover which the bond was given. Neither the sheriff nor his surety, the defendant herein, can deny that the sheriff sold the property of plaintiff, then the defendant, Britannia Mining Company, and that said company is a corporation. (*Phillips* v. *Eggert,* 133 Wis. 318, 126 Am. St. Rep. 963, 113 N. W. 686; Brandt on Suretyship, 3d ed., secs. 796, 799; *Guaranty Co.* v. *Phenix Ins. Co.,* 124 Fed. 170, 59 C. C. A. 376; *Stephens* v. *Crawford,* 1 Ga. 574, 44 Am. Dec. 680; *Bank* v. *Smith,* 12 Allen (Mass.), 243, 90 Am. Dec. 144; *Hall* v. *United States F. & G. Co.,* 77 Minn. 24, 79 N. W. 590.) Section 3015, Revised Codes, makes sheriff's return *prima facie* evidence of facts stated therein. Section 3810 will not permit one who assumes obligations to a corporation to deny its corporate existence.

Mr. JUSTICE HOLLOWAY delivered the opinion of the court.

For two years prior to January 2, 1905, John J. Quinn was the duly elected, qualified and acting sheriff of Silver Bow county. The sureties upon his official bond during that time are not mentioned and are not parties to this proceeding. At the general election held in November, 1904, Quinn was re-elected and on the second day of January, 1905, qualified and entered upon the discharge of his duties for his second term, with

this defendant, United States Fidelity and Guaranty Company, surety upon his official bond for that term. On December 20, 1904, there had been placed in Quinn's hands, as sheriff, an execution issued on a judgment recovered by Charles E. Nickey against this plaintiff. At that time plaintiff owned and was possessed of certain mining claims, mining fixtures, machinery, and tools used in working such mining claims. On January 3, 1905, and after the beginning of his second term, Quinn, as sheriff, sold the fixtures and mining machinery under the execution mentioned above, to satisfy the Nickey judgment. At such sale one Charlton became the purchaser, and thereafter took possession of the purchased property and removed it. On February 27, 1905, after a hearing the district court made an order vacating the sale, and directing the surrender of the property to the Britannia Mining Company, this plaintiff. This action was thereupon brought against the United States Fidelity and Guaranty Company, as surety on Quinn's official bond for his second term. It is alleged that Quinn sold the property on January 3, 1905, without having given any previous notice of such sale, except a posted notice of five days only; that Charlton broke the fastenings and removed the machinery, and in so doing certain parts were broken and otherwise injured; that by reason of the removal of the machinery the works in the mining claims were flooded and great damage done; that the plaintiff company was at great expense in returning the machinery to its place and in renewing broken and missing parts. It is alleged that the sale by the sheriff under the circumstances constituted a breach of official duty. The prayer is for judgment for $11,000 damages, and costs.

The answer admits the corporate existence of the defendant company; the election, qualification and service of Quinn as sheriff; the giving of the official bond by the defendant as surety for Quinn during his second term; that the damages claimed by plaintiff have not been paid; denied generally every other allegation in the complaint; and pleads affirmatively (1) that the levy under the Nickey execution was made during Quinn's first term; and (2) the pendency of another action. A demurrer

was sustained to each of these affirmative defenses, and, defendant electing to stand upon its answer, the cause proceeded to trial, which resulted in a general verdict in favor of the defendant. Plaintiff thereupon moved for a new trial upon all the statutory grounds, except excessive verdict. A bill of exceptions in support of the motion was prepared and settled, and on September 12, 1910, the court by a general order granted the motion, and defendant appealed.

1. It is insisted by appellant that, if the sheriff's action in selling the property, as it was sold, gave rise to any liability, it was a liability incurred during his first term, for which appellant is not responsible; and this contention is made upon the theory that the entire proceedings of the sheriff under the execution, from the date of its levy until and including the sale, constituted an entirety, an indivisible act, and since such act had its inception during Quinn's first term, the liability, if any, attached as of the date of the levy.

The property sold by Quinn was of such character that it was deemed affixed to the mining claims (Rev. Codes, sec. 4428), and was real property. (Sec. 4425.) Section 6828 provides that, before real property can be sold on execution, notice of sale must be given for twenty days by posting and publication. Section 6829 provides: ''An officer selling without the notice prescribed by the last section forfeits five hundred dollars to the aggrieved party, in addition to his actual damages. * * * '' It will [1] be determined at once that in selling this machinery as personal property, upon five days' notice only, Quinn violated the provision of section 6828 above, and subjected himself and his bondsmen to the penalty of section 6829.

To the contention of counsel for appellant that the wrong was done when the levy was made, it would seem sufficient answer to say that the penalty prescribed by the statute is affixed to a wrongful sale, not a wrongful levy. It appears that the Nickey judgment was rendered in Silver Bow county, where the property sold by Quinn was situated. Section 6807 provides that from the time a judgment is docketed it becomes a lien upon the real property of the judgment debtor in that county, not exempt,

and continues for six years, unless the judgment is satisfied. While it does not appear from the complaint in this action when the Nickey judgment was rendered or docketed, evidence was admitted, without objection, which tends to show that the judgment was obtained some time in 1904 prior to the date the execution was issued.  In the absence of anything to the contrary, it will be presumed that the clerk of the district court performed his official duty as prescribed by section 6807 above.  It may be said, then, that it fairly appears from this record that at the time the execution was issued, and thereafter up to the time the sale of January 3, 1905, was made, the judgment was a lien upon the property sold.  While counsel for appellant insist that Quinn's wrongful act was in making the levy, they have adroitly refrained from defining the term "levy" as applied to an execution issued upon a judgment, which is itself a lien upon the real property sought to be sold.  The term "levy" has a well-defined meaning; but it cannot apply to an execution issued upon a judgment of this character.  The object of a levy is to bring the property within the custody of the law and prevent the judgment debtor from disposing of it to the prejudice of the creditor before sale can be made.  But in this instance the Nickey judgment was itself a lien upon the property to be sold.  The property was already in the custody of the law and beyond the control of the judgment debtor, so far as the rights of the creditor were concerned.  The execution was the mere instrumentality through which the creditor might reap the fruit of a seizure which had already been made by virtue of the judgment lien.  In such a case the Code contemplates that the sheriff shall give the required notice and sell.  Nothing more is required, and the references to a levy, in section 6827 and elsewhere, can apply only to property of a character different from that we are [2] now considering.  To make a formal levy in a case of this kind would be an idle ceremony, without significance, legal or otherwise.  These views follow the reason of the law, and are supported by the authorities from states having similar statutory provisions.  (*Wood* v. *Colvin,* 5 Hill, 228; *Bagley* v. *Ward,* 37

Cal. 121, 99 Am. Dec. 256; *Tullis* v. *Brawley,* 3 Minn. 277 (Gil. 191); *Folsom* v. *Carli,* 5 Minn. 333 (5 Gil. 264), 80 Am. Dec. 429; *Knox* v. *Randall,* 24 Minn. 479.) The principle here involved was recognized by this court in *Holter Hardware Co.* v. *Ontario Mining Co.,* 24 Mont. 184, 61 Pac. 3, in holding that real property subject to a lien by attachment may be sold under execution without any further levy.

Our conclusion is that the sale made by Quinn constituted a wrongful act, which is the subject of plaintiff's complaint.

2. It is urged that in this action plaintiff failed to prove its corporate existence; but there was not any issue made upon that [3] question. The complaint alleges that the plaintiff is a corporation organized under the laws of Wisconsin, with its principal office in the city of Milwaukee. The denial in the answer is: ''That as to whether or not the plaintiff, Britannia Mining Company, is now or at any of the times in said complaint mentioned was duly, or at all, organized or existing under or by virtue of the laws of the state of Wisconsin, or having its office or principal place of business in the city of Milwaukee in said state or elsewhere, this answering defendant denies that it has any knowledge or information thereof sufficient to form a belief.'' This is a negative pregnant, which does not raise any issue as to the corporate existence of the plaintiff, but rather admits that the plaintiff is a corporation organized under the laws of some state. (*Bourke* v. *Butte etc. Power Co.,* 33 Mont. 267, 83 Pac. 470.)

3. Apparently counsel desire this court to intimate in advance the extent of Quinn's liability for the wrongful sale. But we cannot anticipate that another trial will be had upon the pleadings as they are presented in this record, and any announcement of ours at this time would be *obiter.*

Since upon the undisputed evidence plaintiff was entitled to [4] a verdict for some amount, the general verdict in favor of defendant was not supported by the evidence, and the order granting a new trial was clearly correct, and is affirmed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.