687 P.2d 1367

**Verdean D. FULTON,
Plaintiff-Appellant,**

v.

**Loyd R. DURO, Defendant,
and
Leroy Samuelson and Delores Samuelson, Intervenors-Respondents.**

**No. 14704.**

Court of Appeals of Idaho.

Aug. 31, 1984.

Review Granted Nov. 16, 1984.

Thomas A. Miller and Eugene A. Ritti, of Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-appellant.

Richard B. Eismann (argued) and Daniel T. Eismann, of Eismann Law Offices, Homedale, for intervenors-respondents.

## ON DENIAL OF PETITION
## FOR REHEARING

WALTERS, Chief Judge.

In this case we are asked to decide whether recording a judgment imposes a

lien on a judgment debtor's interest in land which he is purchasing under an executory contract. We must also determine whether the failure to record a writ of execution is a fatal defect in the levy on real property, invalidating a subsequent execution sale.

Verdean Fulton, holder of a judgment against Loyd Duro, challenges an order which set aside a sheriff's execution sale of real property in which Duro formerly had a vendee's interest. The district court below held that, because the writ of execution had not been recorded, the sheriff's levy on the real property was invalid. The court also held that a judgment lien does not attach to a vendee's interest in land being purchased under an executory contract. Fulton argues that, contrary to the district court's determination, a vendee's interest under a land sale contract constitutes ownership of real property against which a recorded judgment imposes a judgment lien, as provided by I.C. § 10–1110. As an alternative basis for holding that a judgment imposes a lien against a vendee's interest in a contract to purchase real property, Fulton suggests we apply the doctrine of equitable conversion. Finally, Fulton contends that even if we determine that Fulton did not have a judgment lien on the property, failure to record the writ of execution and notice of sheriff's sale should not affect the sheriff's sale because all interested parties, including Leroy and Delores Samuelson—the respondents here and assignees of the vendee, Duro—had actual notice of the sale.

We hold that a vendee's interest in a contract is an interest in real property, within the meaning of I.C. § 10–1110, against which a recorded judgment does impose a lien if the contract has been duly recorded or where, as here, a "notice" of the contract—containing the names of the contracting parties and a legal description of the property—has been recorded. We also hold that I.C. § 8–506 provides a mandatory procedure for levying on real property pursuant to a writ of execution as well as a writ of attachment. Therefore, we affirm the order setting aside the sheriff's sale, but reverse the district court's ruling that the recorded judgment did not impose a lien on Duro's interest under the land sale contract.

I

Verdean Fulton had obtained a stipulated judgment against Loyd R. Duro. An abstract of that judgment was filed and recorded in the Valley County Recorder's office. Fulton requested a writ of execution, which was issued. The sheriff issued a notice of sheriff's sale stating that he had levied on the right, title and interest of Duro in certain real property, which Duro was purchasing under a land sale contract. Neither the writ of execution nor the notice of sheriff's levy was recorded prior to the sale. The sheriff's sale was held and Fulton purchased the property at the sale. After the sale, the sheriff filed a return on the writ of execution, stating that the real property had been sold to Fulton and his wife.

One week later, Samuelson filed a motion to vacate the sheriff's sale. He alleged that Duro had assigned his interest in the real property to Samuelson before the sheriff's sale and that the sheriff had not made a valid levy of execution on the property. Also, Samuelson alleged that a vendee's interest in a land sale contract does not constitute the ownership of real property, within the meaning of I.C. § 10–1110; therefore, the recording of Fulton's judgment against Duro did not give Fulton a lien on the real property before Duro assigned his interest to Samuelson.

The district court granted Samuelson's motion to set aside the sale. The district court noted that I.C. § 11–301 provides that the "sheriff must execute the writ [of execution] ... by levying on a sufficient amount of property" to satisfy the judgment. However, it concluded that only section 11–201 provided instruction on how to "levy" execution. That section provides

that "all other property both real and personal ... may be attached on execution in like manner as upon writs of attachment .... Until a levy, property is not affected by the execution." Under section 8–506, in order to attach real property belonging to the defendant, the title to which is recorded in the name of another, a writ must be recorded in the names of both the defendant and the record owner. The district court concluded that, because Fulton's writ of execution had not been recorded, there was no valid levy of execution.

The district court then turned to the question whether Fulton might still have a judgment lien under I.C. § 10–1110. That section provides that "[a] ... judgment ... recorded with the recorder of any county ... becomes a lien upon all real property of the judgment debtor in the county ... owned by him at the time." The judge noted that this statute was similar to a California statute which had been interpreted as defining "ownership" to exclude an equitable interest in real estate, citing *Oaks v. Kendall*, 23 Cal.App.2d 715, 73 P.2d 1255 (1937) and *Belieu v. Power*, 54 Cal.App. 244, 201 P. 620 (1921). The judge concluded that "ownership" means legal title, not an equitable interest. Because Duro, a contract vendee, had only an equitable interest in the real property at issue here, and legal title was recorded in the name of the vendor, the district court decided that the recording of a judgment against Duro did not create a judgment lien against that property.

## II

We turn first to the question whether recording a judgment imposes a judgment lien, pursuant to I.C. § 10–1110, against the interest in land which a judgment debtor holds as purchaser under a land sale contract. Here, the contract provided that title would remain in the vendor until the purchase price was paid in full, but the vendee would have the right to the possession of the property. The contract further provided that it would not be recorded, but "that a Notice of Real Estate Purchase Agreement shall be recorded to give notice of Buyer's interest." Accordingly, such a notice—containing the names of the contracting parties, the legal description of the property and the name and location of the escrow holder—was recorded in the county where the land was situated.

■ Samuelson argues that I.C. § 10–1110 was taken from a California statute and that the interpretation of that statute by California courts should control our interpretation of I.C. § 10–1110. While we acknowledge that the California statute has been interpreted as Samuelson suggests, we conclude that the reasoning underlying that interpretation is not persuasive. Those decisions interpreted statutes which defined real property as lands, tenements and hereditaments. Idaho statutes do not define real property so narrowly. In Idaho, real property includes land, possessory rights to land, and that which is appurtenant to land, *see* I.C. § 55–101, and is "coextensive with lands, tenements and hereditaments, possessory rights and claims." I.C. § 73–114.

Samuelson also contends that the Idaho Supreme Court has previously held that a vendee under a contract of sale is not an owner of property, citing *Parker v. Northwestern Investment Co.*, 44 Idaho 68, 255 P. 307 (1927) and *Gem State Lumber Co. v. Cameron*, 44 Idaho 595, 258 P. 539 (1927). However, a close examination reveals that this issue was not decided in *Gem State Lumber Co.*

The court in *Parker* considered whether Parker and others were entitled to liens against land arising from improvements requested by Northwestern, a vendee under an installment land sale contract, which would be superior to the interest of, and enforceable against, the contract vendor. The court stated that Northwestern "was not the owner of the land, no payments except the initial payment having been

made." *Id.* at 73, 255 P. at 308. The court did not explain this statement, nor did it cite authority for this position. We are reluctant to accept it at face value without some supporting rationale.

The *Parker* court also stated that even had Northwestern "been the reputed owner, that would not avail [it], because the reputed owner, as such, would have no right to do anything which would give a lien upon the premises." *Id.* The court cited *Santa Cruz Rock Pavement Co. v. Lyons,* 117 Cal. 212, 48 P. 1097 (Cal.1897), in support of this statement. That case stands for the proposition that a real owner "cannot be deprived of his title to the land, nor can a lien be imposed thereon, against his will, by virtue of any agreement or contract on the part of one who is merely reputed to be the owner of such land, unless he has in some way held such person out as the reputed owner, with authority to do the act or make the agreement by which it is sought to create the lien." *Id.* In light of *Santa Cruz,* and the facts of *Parker,* we read *Parker* as stating that a reputed owner, who is a vendee under a land sale contract, can not give a lien upon property which would be superior to the rights and interests of the contract vendor. We are not faced with that issue here. We conclude that *Parker* is not controlling.

At common law, a vendee's equitable interest under an executory contract for the purchase of real property was not subject to execution or judgment liens. *See* Annot., 1 A.L.R.2d 727 (1948); *Sloan v. Loftis,* 157 Ga. 93, 120 S.E. 781 (1923). In many states, the common law has been abrogated by statutes which have explicitly included such an interest in real property within the reach of judgment liens, *e.g., McFarran v. Knox,* 5 Colo. 217 (1880); *Flanagin v. Daws,* 2 Houst 476 (Del.1862); *Rand v. Garner,* 75 Iowa 311, 39 N.W. 515 (Iowa 1888); *Hollida v. Shoop,* 4 Md. 465 (1853); *Hook v. Northwest Thresher Co.,* 91 Minn. 482, 98 N.W. 463 (Minn.1904); *Adams v. Harris,* 47 Miss. 144 (1872);

*Reyes v. Kingman Texas Implement Co.,* 188 S.W. 450 (Tex.Civ.App.1916); *Bartz v. Paff,* 95 Wis. 95, 69 N.W. 297 (1896); or have been construed to do so. *Joseph v. Donovan,* 114 Conn. 79, 157 A. 638 (1931); *Parnes v. Hibbs,* 191 Pa.Super. 56, 155 A.2d 426 (1959). *See generally,* Annot., 1 A.L.R.2d 727 (1948).

We have examined *Cascade Security Bank v. Butler,* 88 Wash.2d 777, 567 P.2d 631 (1977) and *Mutual Building and Loan Assoc. of Las Cruces v. Collins,* 85 N.M. 706, 516 P.2d 677 (1973). In each of those cases, the appellate court held that a vendee's interest in a real estate purchase contract constitutes real property within the meaning of the state's judgment lien statutes. In *Butler,* the Washington Supreme Court noted that it had recognized many rights and interests of a vendee which are "totally inconsistent with the concept that a vendee has no title or interest, legal or equitable." 567 P.2d at 633.

The district court here distinguished *Butler* and *Collins* as the result of amendments to the controlling statutes. However, there was no amendment in *Butler.* In *Collins,* a recent amendment allowed certain individuals to exempt the equitable interest, arising from their purchase of real property under an executory land sale contract, from a statutory lien. The New Mexico Supreme Court determined that the purpose of the amended statute would be contravened if its prior holding, that equitable interests were not subject to judgment liens, governed this case. 516 P.2d at 679. It concluded that the New Mexico legislature did not intend to exempt all equitable interests from judgment liens. The New Mexico legislature did not amend a statute dealing directly with the effect of judgment liens on equitable interests; rather it amended a statute which only peripherally concerned the effect of judgment liens on equitable interests. However, the legislature did so in such a way as to convince the New Mexico Supreme Court that it had erroneously interpreted other

statutes which directly concerned the effect of a judgment lien on equitable interests. We cannot say that the amendment in *Collins* shows that the legislature changed its collective mind on the effect that a judgment lien should have on an equitable interest. We conclude that the change in *Collins* was a change in judicial interpretation of existing statutes and legislative intent, and not a change of the controlling statutes.

■ We are persuaded by *Butler, supra,* that our inquiry should focus on whether the vendee's rights and interests in real property, under a land sale contract which is disclosed by a recording, are consistent with the ownership of real property contemplated by I.C. § 10–1110. First, we note that "possessory rights to land" are included in the statutory definition of real property and real estate. I.C. §§ 55–101, 73–114. The Idaho Supreme Court has stated, in dicta, that real property includes "every interest in lands." *Hughes v. State,* 80 Idaho 286, 293, 328 P.2d 397, 400 (1958). That court has also noted that a vendee under an installment land sale contract "is treated as the equitable owner of the land, and ordinarily possesses all of the rights of ownership," *Rush v. Anestos,* 104 Idaho 630, 634, 661 P.2d 1229, 1233 (1983), and may mortgage that interest. *Id.;* I.C. § 45–1001; *Perkins v. Bundy,* 42 Idaho 560, 247 P. 751 (1926). We conclude that a vendee's interest under an executory contract to purchase real property—where the contract or a notice containing the names of the contracting parties and the description of the property is recorded—is included within the meaning of "all real property of the judgment debtor" against which a recorded judgment imposes a lien under I.C. § 10–1110. *Cf. First Security Bank of Idaho, N.A. v. Rogers,* 91 Idaho 654, 429 P.2d 386 (1967) (judgment lien against vendor, after making of contract of sale but prior to making and delivery of deed, extends to all of vendor's interest remaining in the land and binds the land to the extent of the unpaid purchase price) *and Somers v. Clearwater Power Co.,* 107 Idaho 29, 684 P.2d 1006 (1984) (purchaser under an executory contract to purchase realty has no interest to which the lien of a judgment can attach, where he assigns his interest *prior* to the rendition of a judgment against him).

■ Samuelson suggests that the purpose of limiting judgment liens to real property in which the judgment debtor holds record title is to promote certainty of ownership. The ownership of record and the judgment of record which forms a lien can easily be associated. Samuelson contends that this certainty may be harmed by including a vendee's interest within the reach of judgment liens. Where, as here, a notice of the installment land sale contract is recorded, we believe that certainty of ownership will not be harmed by allowing a judgment to impose a lien on the vendee's interest under that contract. We conclude that this argument does not weigh against the result we have reached on these facts.

The effect of a judgment lien on real property, which property is subsequently conveyed by the judgment debtor, has been settled in Idaho since the turn of the century. In *First National Bank of Lewiston v. Hays,* 7 Idaho 139, 61 P. 287 (1900), the bank, purchaser of real property at a sheriff's sale, sought possession of the property from Hays, the grantee of the judgment debtor, Morrison. In upholding the right of the bank to the property, our Supreme Court said:

> [A]s said judgment was of record in the records of the district court of Nez Perces [sic] county, it was a lien upon said land at the date said judgment debtor, Morrison, conveyed said land to [Hays], and [Morrison] could not devest it of said lien by a conveyance thereof to [the Hays]. Morrison was a party to the action in which said judgment was rendered, and his grantees got no greater interest in said land than he had at the date of his conveyance to them. They

might have redeemed from the sheriff's sale within the time allowed by law for the redemption, but, as they failed to do so, they lost the equity of redemption by lapse of time, and the title passed to the holder or owner of the sheriff's certificate of sale. The judgment became a lien on said land on the date of its entry, March 9, 1894; and the sheriff's deed by relation dated back to the date when the lien of said judgment attached to said land, and cut off all subsequent liens. As Morrison was defendant and judgment debtor in said suit, and as the [Hays] claim title under conveyance from him made subsequent to the entry of said judgment and subsequent to the time that said judgment became a lien upon said land, they are privies to said judgment, and are as conclusively bound thereby, so far as the title to said land is concerned, as Morrison himself.... A judgment debtor cannot divest his land of a judgment lien or lien made by sheriff's sale by transferring the title to another person.

*Id.* at 141–42, 61 P. at 288.

■ Here, under *Hays,* because Fulton had a valid judgment lien against Duro's interest in the real property before Duro assigned that interest to Samuelson, Samuelson took Duro's interest subject to Fulton's judgment lien. Fulton has the right to subject that interest to execution to satisfy his judgment.

### III

We now consider whether the execution was properly conducted. This question turns on whether I.C. § 8–506 provides a mandatory procedure for levying on real property pursuant to a writ of execution. We conclude that it does. Because the sheriff did not comply with this procedure, the district court was correct in setting aside the sheriff's sale of Duro's interest in the real property. However, Duro's interest in the real property, which was assigned to Samuelson, remains subject to Fulton's judgment lien.

"The sheriff must execute the writ [of execution] against the property of the judgment debtor by levying on a sufficient amount of property...." I.C. § 11–301. "Until a levy, property is not affected by the execution." I.C. § 11–201. If real estate is levied upon pursuant to the writ, the clerk must record the writ and the return of the writ in the "execution book" alphabetically under the names of the plaintiffs and the defendants in execution. I.C. § 11–103.

■ These sections reflect the importance of the levy upon property; however, the term "levy" is not defined in Title 11 of the Idaho Code. We believe that the legislature intended that the method of levying under a writ of attachment was also to be used to levy under a writ of execution. "[A]ll ... property both real and personal, or any interest in either real or personal property, ... may be attached on execution in like manner as upon writs of attachment." I.C. § 11–201.

The Idaho Supreme Court has held that there is no levy under a writ of attachment unless the acts required by statute are substantially performed. *Long v. Burley State Bank,* 30 Idaho 392, 165 P. 1119 (1917). A writ of attachment must be executed by the sheriff "by filing with the county recorder a copy of the writ, ... a description of the property attached and a notice that it is attached." I.C. § 8–506(1). If real property or an interest in the real property which belongs to the defendant is recorded in the name of a third person, the notice of attachment must state that the interest of the defendant in the real property which is recorded in the name of the third person is being attached. I.C. § 8–506(2). The recorder must index the attachment in the names of both the defendant and the person holding record title. *Id.*

Using the procedure of I.C. § 8–506 to levy on real property pursuant to a writ of execution provides constructive notice to the world, and actual notice to persons who

examine the public records, that *specific* real property which belongs to the debtor will be sold at a sheriff's sale to satisfy a judgment. In contrast, I.C. § 10–1110, which imposes a judgment lien on *all* real property owned by the debtor, does not provide such actual or constructive notice that *specific* property is to be sold. It only provides notice that any of the judgment debtor's real property is subject to execution. *See Platts v. Pacific First Federal Savings & Loan Ass'n*, 62 Idaho 340, 111 P.2d 1093 (1941).

We recognize that other jurisdictions have held that where a judgment becomes a lien against real property, it is not necessary to levy upon the property by recordation of a writ of execution. *See e.g. Lehnhardt v. Jennings*, 119 Cal. 192, 48 P. 56, 119 Cal. 192, 51 P. 195 (1897); *Britannia Mining Co. v. United States Fidelity & Guar. Co.*, 43 Mont. 93, 115 P. 46 (1911); *Oysterman's Bank & Trust Co. v. Weeks*, 35 A.D.2d 580, 313 N.Y.S.2d 535 (1970); *Jamestown Terminal Elevator v. Knopp*, 246 N.W.2d 612 (N.D.1976); *Finch, Van Slyck & McConville v. Jackson*, 57 N.D. 17, 220 N.W. 130 (1928); *Winslow v. Klundt*, 51 N.D. 808, 201 N.W. 169 (1924). We decline to adopt that approach. We believe it inappropriate to delete, by judicial fiat, a statutorily prescribed step in the process of execution. As noted, that step provides notice that a specific item of property will be sold at a sheriff's sale, rather than the nonspecific notice given by a recorded judgment.

Here, the record shows that the sheriff did not comply with the requirements of I.C. § 8–506 for levying on an interest in real property pursuant to a writ of execution. We hold that the court correctly set aside the sale which followed the invalid levy. Of course, in view of Fulton's judgment lien against Duro's interest, which was assigned to Samuelson, that interest is still subject to future execution to satisfy Fulton's judgment. *Platts, supra.*

In summary, we affirm the order of the district court setting aside the sale, but reverse its determination that Fulton did not have a judgment lien against Duro's interest in the property. We hold that recording a judgment does impose a judgment lien on a vendee's interest under an executory land sale contract where the contract, or a notice thereof containing the names of the parties and a description of the property, has been recorded. In levying on real property pursuant to a writ of execution, the sheriff must comply with I.C. § 8–506. No costs awarded.

BURNETT, J., and SWANSTROM, J., concur.