## DOLTON *v.* CAIN.

1. Under the limitation laws of Illinois which declare in substance "that whoever has resided on a tract of land for seven successive years prior to the commencement of an action of ejectment, having a connected title in law or equity deducible of record from the State or the United States, can plead the possession in bar of the suit," it is not necessary that the entire title of the defendant be evidenced by acts of record. If the source or foundation of the title is of record it is available to every person claiming a legal title who can connect himself with it, by such evidence as applies to the nature of the right set up.

2. If a party to a contract does all that it can be reasonably expected that he will do, he will be considered in equity as having performed his part of the contract so far as to come within the limitation laws above mentioned ; as *ex gr.*, if a party bound to pay money to an agent of his creditor resident beyond seas, offer to pay it to one who was the agent of that creditor, and who declines to receive it only because he had heard ru-

mors òf the principal's death, and had always been and still is ready to pay it to any one having authority to call for it.

3. Where A. in A.D. 1823 conveys to B., in trust for C., *habendum* "to the said party of the second part his heirs and assigns," and B. dies in 1845, and C. conveys in 1848, equity would find a way to protect C.'s grantees against a deed made by B.'s heirs in 1864; supposing such a deed made without undue influence, a supposition hard to make.

4. Where a power of attorney is made by husband and wife, French people resident in France, to sell lands in Illinois,—the power, a long French instrument with the usual verbiage of the *style de notaire*, speaking of the lands as lands which "*Mr.* and *Madame*," &c., own there—there being evidence that the husband owned land there, but none that the husband and wife did, the presumption is that the joinder of the wife was made to alienate some supposed right of dower, and not to describe lands owned by the wife and husband jointly, instead of by the husband alone; this at least in favor of a *bonâ fide* purchaser, long in possession.

5. A mistake in the baptismal name of an obligor to a bond executed by his attorney duly authorized to execute a bond in his right name, does not vitiate the bond, the error being shown to be purely accidental.

ERROR to the Circuit Court for the Southern District of Illinois; the case being this:

Certain statutes of limitation in Illinois,* declare in substance that whoever has resided on a tract of land for a term of seven successive years, prior to the commencement of an action of ejectment, " having a *connected title* in law or *equity* deducible of record from the State or the United States," can plead the possession in bar of suit to dispossess him.

These provisions of limitation being in force, Dolton sued Cain, A.D. 1865, in ejectment, to recover a piece of land in the State just named.

The plaintiff showed as title,

1st. A patent, A.D. 1818, from the United States to one Stephenson for the land.

2d. A deed, A.D. 1820, from Stephenson to one McGuire.

3d. A deed, A.D. 1823, from McGuire " to Auguste Thiriat, in trust for René Marie Ferdinand Jacquemart" (a resident of France), the *habendum* clause being thus:

" To have and to hold the said premises with the appurte-

---

* Revised Statutes of 1845, § 8, chapter 24; Id. §§ 8 and 11, chapter 66.

nances unto the said party of the second part, and his heirs and assigns forever."

4th. The death of Thiriat in 1845, and of Jacquemart in 1848; no more particular dates being shown.

5th. Conveyance, A.D. 1864, by the heirs of both Thiriat and Jacquemart, to Dolton (the plaintiff).

Title in Jacquemart having been, as above stated, shown by the plaintiff, the defendant relied on:

1st. August 10th, 1847, a power of attorney, "each one for themselves," from *Renê Marie* Ferdinand Jacquemart and *wife*, to F. R. Tillou and W. L. Cutting, with power of substitution, authorizing them to sell any lands in Illinois " which *Mr. and Madame Jacquemart* at present own; and in which *the said constituents* have interests, of any kind soever to be protected," and " to sign the contracts of sale in the respective names of the constituents."

2d. September 20th, 1847. A substitution by Tillon and Cutting of one Cockle, to their power to sell, &c.

3d. Proof that on the 29th July, 1848, Cockle as attorney for Jacquemart and wife, sold the land to Cain, the defendant, for $300; of which $100 was to be paid down, and the residue secured by three notes, one for $68, at one year, and two for $66 at two and three years respectively; that the $100 was paid and the three notes given; that contemporaneous with the sale, he, Cockle, professing to act as attorney of *Jean* Ferdinand Jacquemart (the name of *Jean* instead of *Renê Marie*, having as Cockle himself testified, been signed " by inadvertence and mistake," and " the intention having been to execute the instrument in Jacquemart's true name,") executed and gave to Cain a bond for $600, reciting the sale and the terms of it, and conditioned that if Cain paid the notes on the days specified for their payment; and Jacquemart should upon such full payment of the purchase-money execute and deliver to Cain a warranty deed with the usual covenants, then the bond should be void; that the sale was reported within a month to Tillon and Cutting, who approved it; that the first and second notes were paid as they came

due, and with the $100 cash were devoted by Cockle to the paying of taxes on other lands of Jacquemart; that Cain offered payment of the third note at its maturity, but that Cockle refused to receive it, replying to Cain's offer to pay it, that it was rumored that Jacquemart was dead; that Cain had always been ready and willing to pay the note which from the cause mentioned was remaining unpaid, but that he did not know who was entitled to receive the money.

4th. Proof that the defendant took possession of the land very soon after his purchase, and had occupied it continuously by himself or his tenants from that time till the time of the suit brought (A.D. 1865), and for seventeen years had paid taxes on it.

On the facts thus proved, the court below decided that the possession of Cain was protected by the limitation laws of Illinois, already in substance stated, and gave judgment accordingly. From this judgment the plaintiff sued out the present writ of error. The sole question in the case was, whether the defendant, Cain, was within the protection of these laws.

*Mr. B. C. Cook, for the plaintiff in error:*

Cain had no connected title deducible of record, either in law or equity, to the premises in question. The title must be connected; it must be deducible of record. Cain in fact had no *title* in equity at all; though he may have had *interest* in equity. No title in equity could have arisen until he had paid all his notes, for not till then could he have come into chancery and demanded a conveyance. He held, in short, but that inchoate interest which might or might not ripen into an equitable title. Reference by the court to decisions of the Supreme Court of Illinois,* will show that no other view can be taken consistently with them.

Further. All the claim that Jacquemart had to the land arose from McGuire's deed to Thiriat. That deed conveys

---

* Steele *v.* Magie, 48 Illinois, 397; Stow *v.* Steel, 45 Id. 328; Nicoll *v.* Ogden, 29 Id. 377.

to Thiriat, in trust for Jacquemart indeed, but with a *haben-dum* whose effect was obviously to give the estate to Thiriat alone.*

Then these lands, if Jacquemart's at all, were Jacquemart's alone. His wife did not have any ownership in them. The bond was executed by *him* alone if by anybody. But the power of attorney does not authorize the sale of the lands of either Mr. or Madame Jacquemart alone, but only the lands owned by them jointly.†

Finally, *René Marie* is quite a different name from *Jean.*

*Mr. Jackson Grimshaw, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The limitation laws of Illinois relied on by the defendant, in substance, declare that whoever has resided on a tract of land for a period of seven successive years prior to the commencement of an action of ejectment, having a connected title in law or equity deducible of record from the State or the United States, can plead the possession in bar of the suit.

It is objected that the entire title of the defendant is not evidenced by acts of record, but this is not necessary. If the source or foundation of the title is of record it is available to every person claiming a legal or equitable interest under it who can connect himself with it by such evidence as applies to the nature of the right set up.‡

Is the right set up by Cain, then, within the purview of the statute?

It is conceded to be, if the bond was executed under a valid power of attorney, coupled with full payment of the purchase-money, and the obligor had the legal title to the land. This concession was necessary, because it is too plain for controversy that a union of these elements would constitute a complete equitable title, which a court of chancery, on the

---

* Brown *v.* Combs, 5 Dutcher, 36.

† Dodge *v.* Hopkins, 14 Wisconsin, 630.

‡ Collins *v.* Smith, 18 Illinois, 163; Poage's Heirs *v.* Chinn's Heirs, 4 Dana, 4.

proper application, would perfect into a legal title. But there are other principles by which an equitable title can be tested, and, in their application to this case, relieve it of all difficulty. If a party has done all that could reasonably be expected of him to perform his part of the agreement, it will be considered, in equity, as having been done. Cain is within this condition. He purchased the land from Cockle, paid him all he agreed to pay, except the sum of $66, and this he was ready and willing to pay, but Cockle would not receive it, on the plea that it was rumored his principal was dead. Was not this offer equivalent to payment? What more, under the circumstances of this case, would a court of equity require? It would be a harsh rule to say that the purchaser should lose his land because he did not institute inquiry, in France, to ascertain whether the rumor of Jacquemart's death was well founded or not. There was no revocation of the power, and Cockle was the proper person to receive the money, unless Jacquemart were dead; and there is nothing in the record to show that Cain ever received any information on the subject, except what was contained in the reply of Cockle when he offered to pay him the money. Naturally a man in the predicament of Cain would rest in security, until advised by Cockle that he could safely pay the money to him, or until some one having authority called upon him for payment. This was never done; and, after sixteen years' residence on the land, he is called upon to surrender it because he did not employ unusual means to ascertain the proper parties to whom the small balance due on the land should be paid. If there were no limitation law in Illinois applicable to this case, the action of ejectment would, on proper application, have been enjoined until Cain could, through a court of equity, have perfected his title so as to make it available as a legal defence in a court of law. If, then, Cain had such a title as a court of equity would recognize and convert, by its decree, into a legal title, it must be considered a title in equity within the meaning of the statute. Indeed, it is difficult to conceive what the law does mean by a title in equity if this be not

one. It must be something less than a legal title, else these words in the statute can have no effect. The law was designed to protect both kinds of title alike, and, unless equal influence is extended to both, there is a practical repeal of a portion of the statute. In no proper sense can it be said that Cain broke his agreement. It is true he did not formally tender the money to Cockle, but this would have been a useless act, as Cockle told him, on his application to pay, that he could not receive the money. Besides, he had good right to suppose, from what had previously occurred, that the offer to pay Cockle was as valid as the offer to pay Jacquemart.

Why, then, has not Cain, having shown a record foundation, brought himself within the scope of the statute?

It is urged, as an additional reason against this, that Jacquemart did not own the legal title, because one of the *mesne* conveyances made in 1823 was to Thiriat in trust for Jacquemart. This is true, but Thiriat died in 1845, and Jacquemart, the beneficial owner of the land, assumed to have the right to sell it in July, 1848, when he executed his letter of attorney to Tillon and Cutting, with power of substitution. Nothing is heard from the heirs of Thiriat for a period of nineteen years from the death of their ancestor, when, in 1864, they convey, as do also the heirs of Jacquemart, the tract of land in controversy to the plaintiff. After such a lapse of time, in the absence of any proof on the subject, it is difficult to resist the conclusion, that some undue influence must have been used to procure these conveyances; but, be this as it may, the title of Cain is not less an equitable one on account of them, and, if so, the statute will not allow his possession, rightfully obtained and continued the requisite length of time, to be disturbed. Without discussing the effect of the deed of Thiriat's heirs, in its application to this case, it is enough to say that a court of equity, looking through forms to the substance of things, would find a way to protect Cain's purchase.

It is urged, as an additional reason why this defence cannot prevail, that the bond is in the name of Jacquemart

alone, while the power was to convey the joint property of husband and wife. There would be some force in this position, if the original deed to Thiriat had been in trust for the wife as well as the husband; but, as this was not the case, the joinder of the wife could only have been intended to alienate any supposed right of dower in the event that she survived her husband. She had no present title to the land, either legal or equitable; and, although Cockle was empowered to use her name, as well as her husband's, in any instrument of sale he might execute, the failure to do so cannot, in any event, operate to invalidate the bond for a deed which he gave to Cain.

It is hardly necessary to notice the objection, that Jacquemart's name is incorrectly given in the contract of sale. Cockle testifies that this was a mistake, and it is the business of a court of equity to see that Cain is not harmed by it.

On the whole case we are of the opinion that the defendant is within the protection of the limitation laws of Illinois, which he invoked for his defence, and which he had a right to do for that purpose, although the title used to accomplish this object could not be employed by a plaintiff in an action of ejectment, who can only recover when he has the paramount legal title.

In conclusion, it is proper to state that we have examined the decisions of the Supreme Court of Illinois, to which we have been referred as affecting the question at issue, and do not find anything decided which militates against the views we have presented.

JUDGMENT AFFIRMED.

