## ARNOLD *v.* HATCH.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH
CIRCUIT.

No. 183.   Argued March 14, 1900. — Decided April 9, 1900.

A farmer made an arrangement with his son under which it was agreed that the latter should undertake the management of the farm, farm implements and live stock, make all repairs, pay all taxes and other expenses, sell the products of the farm, replace all implements as they wore out, keep up all live stock, and have as his own the net profits. It was further agreed that each party should be at liberty to terminate the arrangement at any time, and that the son should return to his father the farm with its implements, stock and other personalty, of the same kind and amount as was on the farm when the father retired, and as in good condition as when he took it. *Held,* that no sale of the farm property was intended; that the title to the same remained in the father, and that the property was not subject to execution by creditors of the son.

THIS was an intervening petition by the defendant in error,

Lewis Hatch, filed in the District Court for the Northern District of Illinois, in the case of *Joseph G. Heim, Receiver,* v. *Frank W. Hatch,* praying for the release by the marshal and a return to petitioner of a large amount of cattle and other farm property alleged to belong to him, and levied upon by the marshal as the property of Frank W. Hatch.

The cause originated in an action begun in the District Court for the Northern District of Illinois by Joseph G. Heim, as receiver of the First National Bank of Southbend, Washington, against Frank W. Hatch, to enforce against the defendant an individual liability as a stockholder of the bank, which had become insolvent. Defendant having made default, a judgment was rendered against him in the sum of $4351.09 and costs, for which an execution was issued and levied upon the cattle and other farm property in dispute. Whereupon Lewis Hatch, the father of Frank W. Hatch, filed this petition, to which the plaintiff in error, John W. Arnold, marshal for the Northern District of Illinois, made answer, denying the petitioner's ownership of the property, and admitting his levy upon it as the property of Frank W. Hatch.

The case came on for trial before a jury, and resulted in a verdict for the petitioner, upon which judgment was entered. On writ of error from the Circuit Court of Appeals this judgment was affirmed. 60 U. S. App. 659. Whereupon plaintiff in error, Arnold, sued out a writ of error from this court.

*Mr. Kenesaw M. Landis* for plaintiff in error.

*Mr. George A. Dupuy* for defendant in error.

Mr. Justice Brown, after making the above statement, delivered the opinion of the court.

This case presents the frequent question of the title and ownership of personal property, levied upon as the property of an execution debtor, and claimed by another party. The undisputed facts are that, in 1883, the petitioner, Lewis Hatch, who then and for about twenty-five years prior thereto, had re-

sided upon and worked a large farm in McHenry County, Illinois, made a contract with his son, Frank W. Hatch, a young man just out of school, under which it was agreed that the latter should undertake the management of the farm, farm implements and live stock, make all repairs, pay all taxes and other expenses, replace all implements as they were worn out, keep up all live stock, and have as his own the net profits. It was further stipulated that each party should be at liberty to terminate the arrangement at any time, and that the son should turn back to his father the farm with its implements, stock and other personalty, of the same kind and amount as was on the farm when the father retired, and in as good condition as when he took them.

As all questions connected with the veracity of witnesses, the *bona fides* of this arrangement, and its exact terms, are forestalled by the verdict of the jury, we are bound to consider the case as if the arrangement had been reduced to writing, and such writing were the only evidence bearing upon the subject. As the only testimony in the case was that of the father and the son, and as their statements were entirely harmonious, we are simply to inquire as to the correctness of the charge of the court to the jury, that, if they believed the arrangement was substantially such as was stated by the petitioner and his son, it did not have the effect in law to vest the title to any of the property or proceeds of the farm in Frank W. Hatch, although he may have had power to sell the same to others without any further authority from his father. There was evidence showing, not only that the son assumed the entire management of the farm, but that he was at full liberty to sell and dispose of its products, to replace old stock and implements with new, and to appropriate the net proceeds to himself; and that his only obligation was to return the property on demand, or substituted property of the same kind and amount, whenever either party should see fit to terminate the arrangement.

We do not know that it is necessary to fix an exact definition to the relations between these parties, or to determine whether the law of master and servant, landlord and tenant, or bailor and bailee, governed the transaction. The main object is to

ascertain the intent of the parties with respect to the ownership of the property. There is no doubt that the title to the farm remained in the father, who continued to occupy the homestead and provided accommodations for certain of the farm hands; that the arrangement was made with his son soon after he left school, and apparently for the purpose of starting him in business. He was then unmarried, and lived in the same house with his father, who furnished the board of the hired men until after the son was married, when, after living some time with his wife in the homestead, he built at his own expense a small house for his own use about twenty or thirty rods distant from that of his father, although some of the hired men still lodged with the latter. In 1887, the son, Frank W. Hatch, gave up the arrangement, moved with his family to Texas, and settled there with the intention of making it his home. Upon going there he left all the stock upon the farm just as he had received it from his father. He subsequently became dissatisfied, and returned to his father's farm under the same arrangement. He continued under this arrangement until 1892, when he went to the State of Washington for the purpose of locating there; invested in real estate and apparently in bank stock, in which he appears to have been unfortunate. Again returning to Illinois, he resumed the management of the farm.

It further appeared from the tax schedules of personal property in that school district that the property in question was assessed in the name of Frank W. Hatch. While this testimony was doubtless entitled to consideration, the jury evidently did not give it great weight, as it was part of the agreement between the father and son that the latter should pay the taxes.

There was also evidence that, in the spring of 1897, the son sold to his father for $1000 a quantity of wool produced on the farm; but as it was also a part of the agreement that the son should have the product of the farm, there was nothing inconsistent with it in this sale of the wool.

It is very evident from this testimony that no sale of the farm property was intended. There was no purchase price agreed upon, no time fixed for the payment; and the reservation that the arrangement might be terminated the day after it was made,

as well as that it might indefinitely continue, is wholly inconsistent with the theory of a sale.   Indeed, the only *indicium* of a sale is the provision that the identical property received need not be returned, but that other property of a similar kind might be substituted.   Plaintiff in error relies in this connection upon a line of cases which hold that, where a man turns over personal property to another, under an arrangement by which the latter is not obliged to restore the specific articles of property, but is at liberty to deliver other property of the same kind and value, the receiver becomes the owner of the property ; as where wheat is delivered to an elevator with the understanding that the obligation to return it shall be discharged by the delivery of other like wheat, Story on Bailments, § 439 ; *Lonergan* v. *Stewart*, 55 Illinois, 44 ; *Bretz* v. *Diehl*, 117 Penn. St. 589 ; *Smith* v. *Clark*, 21 Wend. 83 ; *Johnston* v. *Browne*, 27 Iowa, 200, although even then, a usage to return substituted property may turn the transaction into a bailment.   *Erwin* v. *Clark*, 13 Michigan, 10.   But these authorities have no application to the case under consideration.   Here there was no provision for a substituted property beyond that required by the nature of the property delivered.   The arrangement was to be indefinite in its continuance.   The property was mostly animals which would necessarily die, be sold or slaughtered in a few years, and a gradual substitution of their progeny or other similar cattle, and a renewal of worn out implements, was all that was contemplated.   The stipulation that this might be done was a mere incident of the main agreement by which the property was to be returned in like good order and condition as received.

The son was undoubtedly entrusted with extensive powers, but no greater than the management of a large farm would necessarily require.   The father had become an old man, and naturally wished to rid himself of the responsibility, even of supervision, and to put his son upon the footing of an independent farmer.   It is possible that he contemplated leaving the property to his son upon his death ; but it was clearly his intention to reserve the power of revoking the arrangement in case it did not prove satisfactory to him.   As the father remained in possession of the farm, there was nothing in the mere fact that he

entrusted his son with the management, that was necessarily calculated to mislead creditors into the belief that the latter was the owner of the property. Apparently the receiver was unable to produce evidence manifestly inconsistent with the agreement as sworn to by both father and son, and their testimony authorized the jury to find the ownership of the property to be in the former.

Similar agreements have been sustained as against creditors in a number of cases. *Chatard* v. *O'Donovan*, 80 Indiana, 20'; *Wilbur* v. *Sessin*, 53 Barb. 258; *Bowman* v. *Bradley*, 101 Penn. St. 351; *Kerrains* v. *People*, 60 N. Y. 221; *Haywood* v. *Miller*, 3 Hill, 90; *Brown* v. *Scott*, 7 Vermont, 57; *Peters* v. *Smith*, 42 Illinois, 422; *State* v. *Curtis*, 4 Dev. & Battle Law (N. C.), 222.

There was no error in the judgment of the Court of Appeals, and it is therefore

*Affirmed.*