682 F.2d 208
 GUILD TRUST, Melba L. Guild, Delmar D. Dean and Mary Melba
Guild Dean, husband and wife, Earl Guild and Barbara Jo
Guild, husband and wife, Ferd Christiansen and Eva Lois
Christiansen, husband and wife, Plaintiffs-Appellants,
v.
UNION PACIFIC LAND RESOURCES CORPORATION, a corporation,
Champlin Petroleum Company, a corporation, and
Amoco Production Company, a corporation,
Defendants-Appellees.
 No. 79-1568.
 United States Court of Appeals,
Tenth Circuit.
 June 16, 1982.
 
 Charles D. Phillips, Evanston, Wyo., for plaintiffs-appellants.
 Daniel M. Gribbon of Covington & Burling, Washington, D.C. (Russell H. Carpenter, Jr. of Covington & Burling, Washington, D.C., Houston G. Williams of Williams, Porter, Day & Neville, P. C., Casper, Wyo., Harry O. Hickman and Frank H. Houck, Denver, Colo., Ewing Werlein, Jr. and Ben H. Rice, III of Vinson & Elkins, Houston, Tex., of counsel, for Amoco Production Co., D. Thomas Kidd, Casper, Wyo., and Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., of counsel, with him on the brief), for defendants-appellees.
 Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 The Guild Trust brought this action against the Union Pacific Land Resources Corporation and others seeking to quiet title to minerals in the subject lands. The trial court, 475 F.Supp. 726, however, by summary judgment quieted title in the minerals including oil and gas in the defendants. The trial court held that the six deeds here concerned reserved title to all the minerals in the grantor. The plaintiffs have taken this appeal asserting basically that summary judgment was not a suitable method to resolve the issues.
 
 
 2
 Six of the seven deeds here concerned reserve to the grantor and to its successors and assigns "all coal and other minerals within or underlying said lands." This was the same reservation contained in the deeds considered in the case of Amoco Production Co. v. Guild Trust, 636 F.2d 261 (10th Cir. 1980). In that litigation between these same parties the trial court held, 461 F.Supp. 279 (D.Wyo.1978), and we held, that the reservation included oil and gas. We said:
 
 
 3
 "If the Wyoming Supreme Court were presented with the precise issue presented in this case, we believe it would hold that the deed term 'other minerals' includes oil and gas as a matter of law."
 
 
 4
 The Amoco decision is controlling on that issue as presented in this case. Furthermore, it was an issue proper for resolution by summary judgment.
 
 
 5
 The appellant Guild Trust seeks to present in this court factual material not presented to the trial court including sales contracts, mortgages, and briefs in other cases, all of which cannot be considered.
 
 
 6
 One of the seven deeds, which is referred to as the Section 5 deed executed in 1895, covers Section 5, Township 14 North, Range 117 West, of the Sixth Principal Meridian, in Wyoming. This deed contains a reservation different from those included in the other six. The reservation in this Section 5 deed reads:
 
 
 7
 "Reserving, however, to the said Union Pacific Railway Company, its successors, grantees, or assigns, the exclusive right to prospect for coal and other minerals within the underlying said lands, and to mine for and remove the same, if found, and for this purpose it shall have right of way over and across said lands and space necessary for the conduct of said business thereon, without charge or liability for damage therefor."
 
 
 8
 The trial court held that under Wyoming law this reserved the entire estate in the minerals to the grantor and to its successors, grantees, and assigns. This holding is consistent with the holding of the vast majority of decisions which have considered the matter. Apparently the only exception is the opinion of the Colorado Supreme Court in Radke v. Union Pacific Railroad Co., 138 Colo. 189, 334 P.2d 1077 (1959), where the court considered a similar reservation, but one which did not go to the successors, grantees, or assigns.
 
 
 9
 The Section 5 reservation has no time restriction, is an exclusive right, without limitations or conditions. The Wyoming court has not considered the particular issue. Its opinions contain no contrary indications, and under these circumstances we will follow the view of the trial court as to what doctrine would be adopted by the Wyoming Supreme Court.
 
 
 10
 The plaintiffs-appellants filed this suit in March of 1978 while the Amoco action wherein they were defendants was pending, and had been pending for about five months. They apparently were prepared to have the two actions proceed at the same time. In any event, they chose to do so.
 
 
 11
 The plaintiffs had taken no action in this case for about a year when the defendants filed a motion for summary judgment on February 20, 1979. The trial court had decided the Amoco case about three months before-in November of 1978.
 
 
 12
 The trial court set the motion for summary judgment soon after it was filed for a hearing to be held on March 16, 1979, the date the case had been set for trial. The plaintiffs moved to stay all proceedings in the case until the appeal in Amoco had been decided. The defendants agreed, but the court on March 12 denied the stay. The plaintiffs' second motion for stay was also denied, and the motion for summary judgment was heard on March 16, the trial date which had been set some three-and-a-half months before.
 
 
 13
 The trial court announced that it would grant summary judgment for the defendants. However, after the hearing the court allowed plaintiffs a period of thirty days in which to make additional filings relative to the motion. Plaintiffs did not so act, and instead they sought again to stay all proceedings, to amend their complaint, to urge that the court should not consider the case further, and for discovery. Under these circumstances the court acted within its discretion in denial of this post-judgment relief. Again, it must be observed that the trial court had some three-and-a-half months before the March hearing date set that date for the trial date.
 
 
 14
 We find nothing in the record wherein the plaintiffs sought additional time to prepare for the hearing on the motion for summary judgment. Instead, before the hearing date the motions were for a stay of the entire proceedings and were not directed to the matter at hand. The plaintiffs did not seek relief under Fed.R.Civ.P. 56(f) which provides that a party may file an affidavit stating why he cannot present facts in response to the motion, and further provides that the court may grant a continuance to permit the filing of affidavits or to permit discovery. This relief requires that an affidavit be filed stating reasons. This was not done.
 
 
 15
 We find no post-judgment motions seeking leave to file affidavits or other material to respond to the motion for summary judgment, nor for additional time to do so. The motions were directed in part to discovery matters, which may or may not have been pertinent to the summary judgment hearing, but they were not so presented.
 
 
 16
 Thus plaintiffs in no way complied with Fed.R.Civ.P. 56 to meet the motion for summary judgment. They filed no affidavits or other material, nor did they in any way demonstrate for the record that an issue of material fact remained. The issues resolved by the summary judgment-that the reservations included oil and gas and that the Section 5 reservation was of the mineral estate-were questions of law.
 
 
 17
 We have held in a series of cases including Bankers Trust Co. v. Transamerica Title Ins. Co., 594 F.2d 231 (10th Cir. 1979), and Downes v. Beach, 587 F.2d 469 (10th Cir. 1978), that a party against whom a motion for summary judgment is directed cannot rely only upon his pleadings but must make a response. The rule clearly requires a direct response. Thus if the motion is supported as the rule directs and this material constitutes a prima facie showing that summary judgment is warranted, then the opposing party, the plaintiffs here, "must demonstrate, by specific facts, that there is a genuine issue for trial." Bankers Trust Co. v. Transamerica Title Ins. Co., 594 F.2d 231 (10th Cir. 1979). This is the language of the rule. It requires the plaintiffs to respond "by affidavits or as otherwise provided in this rule ... (to) set forth specific facts."
 
 
 18
 As mentioned above, this case had then been pending over a year. Plaintiffs had started it with the Amoco case already underway where the very same issues were being considered, except only the Section 5 reservation. The decision of the trial court in Amoco was known about three months before the summary judgment motion was filed in this case and this was some four months before the trial date.
 
 
 19
 The plaintiffs urge in this court that they did not have time to meet the motion for summary judgment, and they were busy with the Amoco appeal process. However, we find no abuse of discretion on the part of the trial court in proceeding with the summary judgment when it did.
 
 
 20
 As mentioned, the plaintiffs filed nothing whatever in response to the motion for summary judgment, and there was nothing but their pleadings. The defendants had submitted as part of their motion affidavits showing their chain of title to the reserved mineral estate and the conveyances were part of the record. Defendants made an adequate showing that the only issues remaining were issues of law, and that the case was suitable for resolution by summary judgment. The trial court determined that there were no unresolved fact questions, and that the legal issues were adequately developed and could and should be decided on the record before it. We agree.
 
 
 21
 In their estoppel argument the plaintiffs place great reliance on the Colorado case of Radke v. Union Pacific Railroad Co., 138 Colo. 189, 334 P.2d 1077 (1959), which concerned a reservation similar to the Section 5 reservation with which we are here concerned. They urge that collateral estoppel be applied against the defendants on the basis of Radke. We must hold that the doctrine cannot be applied because the reservations are different in a basic and important respect. Further, the Radke case was decided under the real property and conveyancing law of Colorado while the reservation here concerned is to be decided under the property law of Wyoming. See 32 A.L.R.3d 1330.
 
 
 22
 In the Radke case the reservation did not run to the "successors, grantees, or assigns" of the grantor. This provision is a clear indication that the reservation here concerned would survive assignments and other transfers. Thus in our view the Radke court, which did not have before it the provision as to successors and assigns, decided quite a different case where it held that the reservation there concerned was a revocable license which would also terminate when the surface was transferred.
 
 
 23
 This Section 5 reservation to successors and assigns when coupled with its exclusive nature and with the absence of conditions or limitations lead to the conclusion reached by the trial court.
 
 
 24
 Real property doctrines are matters for the determination by the state where the land is located. The Supreme Court in Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, stated that "the state where the land is located is 'sole mistress' of its rules of real property." See also Hood v. McGehee, 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144, and Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65.
 
 
 25
 The Wyoming courts do not apply the doctrine of collateral estoppel unless identical issues are present. Roush v. Roush, 589 P.2d 841 (Wyo.1979), nor do we. The issues here are not identical and the law of property of Wyoming must be applied. The doctrine of collateral estoppel cannot be applied to the Radke litigation.
 
 
 26
 AFFIRMED.