698 P.2d 458

**BANK OF SANTA FE,**
**Plaintiff-Appellee,**

v.

**Abe GARCIA, et al.,**
**Defendants-Appellees,**

and

**Reginaldo Espinoza II and Trinnie B.**
**Espinoza, Defendants-Appellants.**

**Nos. 7483, 7611.**

Court of Appeals of New Mexico.

March 14, 1985.

Certiorari Denied April 18, 1985.

Charles A. Purdy, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for plaintiff-appellee.

Nancy Augustus, Singleton Law Offices, George M. Scarborough, Santa Fe, for defendants-appellants.

John P. Davidson, Erwin and Davidson, P.C., Raton, for defendant-appellee Western Bank.

## OPINION

NEAL, Judge.

The parties in this consolidated appeal were involved in a foreclosure proceeding. The plaintiff-appellee, Bank of Santa Fe, filed suit to foreclose its judgment lien against Boston E. Witt and Kathleen A. Witt (the Witts), who are not parties to the appeal. The principal amount of the judgment lien was $32,356.42, plus interest and attorney's fees. Many creditors, including defendant-appellee Western Bank, also had judgment liens against the Witts which were inferior to that of the Bank of Santa Fe. Default judgment was entered against the Witts and others. Plaintiff moved for summary judgment on issues involving only plaintiff. Western Bank moved for summary judgment on its cross claim seeking foreclosure and a determination of the lien priority of the parties. Summary judgment was granted on all issues based on the pleadings and affidavits, including an affidavit showing the priorities and amounts of the judgment liens on the property. The court determined the priority of the various liens and the amounts secured by the liens. The court ordered the property sold by special master and granted deficiency judgments to those lien creditors not fully satisfied from the proceeds.

The property subject to the judgment lien was real estate which was in the possession of the Witts in 1975, at the time the lien was created. They were purchasing the property under a real estate contract with the Smiths. During the proceedings the Smiths assigned their interest as vendors in the property to Western Bank. In 1979, the Witts deeded the property to Reginaldo Espinoza. There were numerous judgment liens outstanding against him as well. In June 1981, Espinoza deeded his interest to his mother, Trinnie B. Espinoza, who accepted the deed with actual knowledge of the existence of outstanding judgment liens against the property. She made improvements on the property.

The Espinozas (hereinafter "defendants") appealed the trial court's final judgment and decree of foreclosure. They also

appealed the trial court's subsequent order approving the special master's sale and awarding deficiency judgments, and the order disbursing the proceeds of foreclosure. We affirm the judgment and orders, except as to deficiency judgments granted three creditors who did not appear, that must be omitted for lack of jurisdiction.

## I. Foreclosure.

Defendants contend on appeal that summary judgment was improper because there was a genuine issue of material fact as to the extent to which the proceeds of the foreclosure sale should have been distributed to creditors. Defendants' brief takes the position that this court should adopt a rule that only funds representing the value of the judgment debtor's equitable interest in the property are available to satisfy the debtor's judgment liens and, therefore, the court below should have determined the value of that equitable interest. Under their theory, the value of the equitable interest raises an issue of material fact. The Bank of Santa Fe and Western Bank argue that defendants, as transferees of an equitable interest in real estate, took the property with knowledge of the outstanding liens against the property and contributed to the equity in the property at their peril. Under this theory, the full value of the debtor's estate in the property is subject to disbursement to creditors following foreclosure sale.

▆▆▆ The judgment lien on real estate is a right created by statute. *Curtis Manufacturing Co. v. Barela,* 76 N.M. 392, 415 P.2d 361 (1966). NMSA 1978, Section 39–1–6 (Cum.Supp.1984) states, in applicable part, that "[t]he judgment shall be a lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate." Once the statutory terms have been complied with, i.e., the transcript of the judgment is recorded, a transferee of the debtor takes the property with constructive notice of the amount of the judgment and the life of the lien. *Kin-*

*ney v. Vallentyne,* 15 Cal.3d 475, 124 Cal. Rptr. 897, 541 P.2d 537 (1975).

Defendants do not deny that valid judgment liens have attached to the Witts' interest in the real estate. Relying on *Romero v. State,* 97 N.M. 569, 573, 642 P.2d 172, 176 (1982), however, defendants contend that the liens do not attach to the full value of the property at the time of foreclosure. *Romero* states that "a judgment lien can attach only to whatever interest the debtor has in the property." Defendants urge us to limit a "debtor's interest" under these circumstances to the value of payments and improvements made by that debtor, or the amount commonly referred to as his or her "equity." Under defendants' definition of a debtor's "interest," the trial court should have determined the amount of the Witts' equity and precluded their judgment lien creditors from reaching any of the proceeds in excess of that amount. While the issue has not been specifically addressed in New Mexico, the answer depends upon the terms and construction of the statute's provisions. 3 R. Powell, *Powell on Real Property* ¶ 479 (1984). *See generally* Note, *Rights of a Judgment Creditor Against a Vendor or Vendee Following an Executory Contract for the Sale of Land,* 43 Iowa L.Rev. 366 (1958). The case law regarding the relationship between judgment liens and real estate contracts, together with the plain statutory language, indicates that defendants' position is incorrect.

▆▆▆ Under a real estate contract, the purchaser holds equitable title, while the seller retains legal title in trust until the contract is paid. A judgment lien against the purchaser attaches to the equitable interest under the contract. *Mutual Building & Loan Association of Las Cruces v. Collins,* 85 N.M. 706, 516 P.2d 677 (1973), *overruled on other grounds, Marks v. City of Tucumcari,* 93 N.M. 4, 595 P.2d 1199 (1979). In *Marks* the supreme court ruled that a judgment lien cannot attach to the legal title held by the seller because the purchaser is treated as the owner of the land and the seller merely holds legal title

as trustee. The seller's interest is considered personalty. *Marks.* During the life of a real estate contract any risk of loss or enhancement of value accrues to the purchaser. *MGIC Mortgage Corp. v. Bowen,* 91 N.M. 200, 572 P.2d 547 (1977). In short, when the vendor has not exercised his contractual rights to declare a forfeiture, our cases support recognizing that the debtor's estate in the property is an equitable fee simple, subject to the vendor's lien for the unpaid purchase price. *See generally* III A. Casner, *American Law of Property* ¶ 11.29 (1952). Therefore, because a judgment lien is a lien on the real estate of the debtor from the date of filing of the transcript of judgment, Section 39–1–6, and a purchaser under a real estate contract is treated as the owner of the property, the debtor's interest in the property to which the lien attaches, when he holds equitable title under a real estate contract, is the full value of his estate in the property, not just the amount of his payments and the value of improvements as defendants here contend.

The same result has been reached elsewhere in comparable situations; courts in other jurisdictions have not restricted judgment lien creditors of a mortgagor to the amount of his or her payments and improvements at the date of foreclosure. *Belnap v. Blain,* 575 P.2d 696 (Utah 1978); *Kinney v. Vallentyne,* 124 Cal.Rptr. at 899, 541 P.2d at 539; *Gray v. Stevens,* 5 Utah 2d 361, 302 P.2d 273 (1956). The rule is consistent with the strong public policy in favor of satisfaction of judgments. *See Mutual Building & Loan Association of Las Cruces v. Collins.* The language of *Cochran v. Cutler,* 39 Ill.App.3d 602, 350 N.E.2d 59 (1976), in an analogous situation, is applicable to the Espinozas here. "By failing to make arrangements for the satisfaction of the lien at the time of the conveyance, they took the risk that the property might increase in value and that such increase might be reached by the judgment creditors should they choose to enforce the lien." 39 Ill.App.3d at 609, 350 N.E.2d at 64. Knowing that risk, they contributed to the equity in the property at their peril.

*Kinney v. Vallentyne.* As stated in *Belnap v. Blain,* 575 P.2d at 699–700 (quoting *Gray v. Stevens,* 5 Utah 2d at 364, 302 P.2d at 274) to rule otherwise

could lead to absurd and illogical results. If the aggregate sum of encumbrances exceeded by ten cents the court-found property value, the judgment creditor forever would be foreclosed in a quiet title suit from asserting his lien. The next day the debtor safely could convey the property free from the judgment lien. If the aggregate amount fell ten cents short of the adjudged value of the property the judgment creditor's lien would be preserved during the judgment's life and could result in an execution against the property when and if the encumbrances were paid off, voluntarily discharged, judicially declared to be inferior, foreclosed (in which event the judgment creditor could assert his valuable right of redemption), or otherwise disaffiliated with the ownership,—and the magic sum of ten cents would make all the difference in the world. So long as the judgment is extant * * * the judgment does not lack virility in futuro, when, as pointed out above, the property may become disencumbered.

## II. Value of Improvements.

██ Defendants contend that the court erred in refusing to allow Mrs. Espinoza to recover the reasonable value of the improvements she made on the property. This contention is answered by the discussion under Point I. Mrs. Espinoza made the improvements with actual and constructive knowledge of the prior liens on the property and, therefore, contributed to the equity at her peril. *See Kinney v. Vallentyne.*

## III. Deficiency Judgments.

 (1) Defendants contend that the court erred by granting deficiency judgments to three creditors who were served with process, but did not answer or appear in the case because the court lacked jurisdiction over them. The creditors, La

Tienda de Santa Fe, U.S. Life Credit Corp., and Venture Capitol Corp., possessed judgment liens not satisfied out of the proceeds of the foreclosure sale. The issue of the jurisdiction of the district court may be raised for the first time on appeal. *Perea v. Baca*, 94 N.M. 624, 614 P.2d 541 (1980). The basis for the contention is that the court lacked jurisdiction to grant relief to parties which had not appeared to ask for the relief granted. We agree and, therefore, modify the judgment to omit the deficiency judgments granted the three creditors and affirm as so modified. *See Haden v. Eaves*, 55 N.M. 40, 226 P.2d 457 (1950).

The second amended complaint named the three creditors as additional defendants, alleging that they claimed interest in the property by virtue of judgment liens. The counterclaim and cross claim of Western Bank also alleged that the three creditors claimed an interest in the property, which was inferior to that of Western Bank, and asked the court to determine the priority of the liens. The three creditors did not answer or otherwise appear. Western Bank then filed its motion for summary judgment, supported by affidavits which summarized the abstract of title on the property and particularized the amounts of the recorded judgment liens of each party. The provision for deficiency judgments in the final judgment and decree of foreclosure accounted for the recorded claims of the creditors who could not be satisfied out of the proceeds of the foreclosure sale. However, the creditors did not appear to invoke the court's aid and, therefore, the court was without jurisdiction to grant relief on their behalf. *See City of Natchez v. Craig*, 191 Miss. 567, 3 So.2d 837 (1941); 21 C.J.S. *Courts* § 83 (1940). The underlying judgments upon which the deficiency judgments were based are not affected by our ruling, of course, and remain viable.

(2) Defendants also contest deficiency judgments against Mr. Espinoza in favor of Lewis Thompson and Charolyn R. Espinoza, alleging that Mr. Espinoza acquired the property subject to the lien after the liens arose. We do not address this issue because the issue is moot. The judgment liens complained of were discharged in the foreclosure. The underlying judgments remain in effect, of course, because the proceeds of the foreclosure sale were insufficient to satisfy them. Therefore, the issue can have no effect on the result below. This court does not decide moot questions. *State v. Vogel*, 39 N.M. 122, 41 P.2d 1107 (1935).

Affirmed as modified.

**IT IS SO ORDERED.**

BIVINS and MINZNER, JJ., concur.