**In the Matter of the ESTATE OF David Gary VENTLING, Deceased.**

**INSURANCE COMPANY OF NORTH AMERICA, Appellant (Respondent),**

v.

**Walter W. VENTLING, personal representative of the estate of David Gary Ventling, deceased, Appellee (Petitioner).**

**No. 88–204.**

Supreme Court of Wyoming.

March 31, 1989.

John R. Perry, Goddard, Perry & Vogel, Buffalo, for appellant.

John C. Hoard, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The single issue for the court to resolve in this case is whether the equitable inter-

est of a buyer under a contract for deed is subject to the statutory lien attaching by virtue of a judgment. The trial court ruled that the interest of a buyer in an executory installment contract for the sale of land is not described by the phrase "lands and tenements" adopted in § 1–17–302, W.S. 1977. The district court then held that the Insurance Company of North America (appellant) was not entitled to assert a judgment lien as a claim against the estate of the deceased buyer under the contract for deed. We agree with that decision of the district court and affirm the order declaring that the judgment under which appellant claims did not constitute a lien upon the interest of the decedent in the contract for deed.

Appellant defines the issue presented for review in this way:

> "Did the trial court err in ruling that decedent's interest as vendee under a contract for deed was not subject to a properly filed judgment lien?"

Walter W. Ventling, Personal Representative for the Estate of David Gary Ventling (appellee), adopts the same issue in his brief and defends the judgment of the district court in the light of the appellant's contention.

In 1982, David Gary Ventling stole some cattle in Montana and disposed of them in Johnson County. He was prosecuted and convicted for this cattle theft. Appellant had insured the cattle under policies which it had issued, and it was obligated to reimburse its insureds for their losses. Under standard doctrines of subrogation, it acquired the claim against Ventling and brought an action to recover the value of the cattle. Appellant obtained a judgment against Ventling on May 22, 1985 in the amount of $23,880. Interest accruing to the date on which this action was brought, when added to the judgment amount, resulted in a total indebtedness of $26,555.87.

After settlement negotiations with Ventling, the appellant recorded its judgment in the office of the County Clerk in Johnson County on January 24, 1986, and it asserts a lien on Ventling's interest in real property identified as "New Dawn Trailer Court." Ventling was buying this property under a Contract for Deed which he had assumed from a prior purchaser. On June 26, 1986, Ventling was killed in a truck accident, and his estate was probated by the appellee, who is Ventling's father. After the initiation of the probate proceedings, appellant submitted a creditor's claim to appellee for satisfaction of the judgment. Appellee refused the claim and presented a motion in the probate proceedings for a declaratory judgment as to the validity of appellant's lien. That effort culminated in an order by the probate court ruling that appellant had no lien against the estate's interest in "New Dawn Trailer Court." This appeal is taken from that order.

The statute pursuant to which the appellant seeks recognition of its lien provides in pertinent part:

> "The lands and tenements within the county in which judgment is entered are bound for the satisfaction thereof * * *." Section 1–17–302, W.S.1977.

The resolution of this case depends very simply upon whether the phrase "lands and tenements" is broad enough to include the interest of a purchaser under what is alternatively denominated as a contract for deed or an installment land contract. Under such an arrangement for the conveyance of real property, the seller agrees to accept payments from the buyer, usually over a period of time, until the price set by the contract has been paid. When that condition is satisfied, the seller is bound to deliver a deed to the buyer. At all times prior to the final payment and the delivery of the deed, even though the buyer usually has possession, legal title remains vested in the seller. *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424 (1980). The interest of the buyer is equitable, not legal. In prior cases involving different issues, we have adopted the premise that the legal interest remains with the seller and the buyer's interest is an equitable interest although we have recognized that the parties could manifest an intention otherwise. *Marple v. Wyoming Production Credit Association*, 750 P.2d 1315 (Wyo.1988); *Angus Hunt*

*Ranch v. REB, Inc.*, 577 P.2d 645 (Wyo. 1978); *Baldwin v. McDonald*, 24 Wyo. 108, 156 P. 27 (1916). See G. Rudolph, The Wyoming Law of Real Mortgages, 147 (1969).

Appellant acknowledges the rule at common law that judgment liens do not attach to the equitable interest of a purchaser of land under a contract for deed or an installment land contract. *Warren v. Rodgers*, 82 N.M. 78, 475 P.2d 775 (1970). See *Mutual Building & Loan Association v. Collins*, 85 N.M. 706, 516 P.2d 677 (1973); cases cited in 46 Am.Jur.2d *Judgments* § 260 (1969). A justification advanced frequently is that the buyer, until legal title is transferred, holds nothing of substance and, consequently, has nothing upon which a lien or attachment can be levied. See e.g., *Arnold v. Hatch*, 177 U.S. 276, 20 S.Ct. 625, 44 L.Ed. 769 (1900); cases cited in 6 Am.Jur.2d *Attachment and Garnishment* § 142 (1963). The appellant also recognizes the possible, or perhaps likely, application of this rule in Wyoming in the absence of a different clear statutory direction.

Appellant contends, however, that this rule is outmoded and urges upon the court, as the better reasoned view, the rule adopted by those jurisdictions which allow the attachment of such a lien. Appellant cites a number of cases and emphasizes those from sister states in the Rocky Mountain area that have reconsidered the common law and permitted the attachment of such liens. E.g., *Fulton v. Duro*, 107 Idaho 240, 687 P.2d 1367 (Idaho App.1984), aff'd 108 Idaho 392, 700 P.2d 14 (1985); *Collins; Bank of Santa Fe v. Garcia*, 102 N.M. 588, 698 P.2d 458 (N.M.App.1985), cert. denied sub nom. *Espinoza v. Bank of Santa Fe*, 102 N.M. 613, 698 P.2d 886 (1985); *Butler v. Wilkinson*, 740 P.2d 1244 (Utah 1987). The appellant also points out that the equitable interest of the purchaser frequently has significant economic value as the obligation is reduced or the land perhaps increases in value. Several jurisdictions have acknowledged a tangible worth attaching to the equitable interest which justifies such an interest to be readily used for security or easily assignable.

*O'Neill Production Credit Association v. Mitchell*, 209 Neb. 206, 307 N.W.2d 115 (1981); *Shindledecker v. Savage*, 96 N.M. 42, 627 P.2d 1241 (1981); *Bill Nay and Sons Excavating v. Neeley Construction Company*, 677 P.2d 1120 (Utah 1984).

In those jurisdictions in which the attachment of the lien is recognized, the result is justified either by applying the theory of equitable conversion or by interpretation of statutory language. The equitable conversion theory treats the interest of the purchaser to be tangible real estate from the time the installment land contract or contract for deed is executed and considers the purpose of the retention of title by the vendor to be a security interest, with the contractual right to the balance of the purchase price treated as personalty. *Marks v. City of Tucumcari*, 93 N.M. 4, 595 P.2d 1199 (1979); *Cascade Security Bank v. Butler*, 88 Wash.2d 777, 567 P.2d 631 (1977); *Meltzer v. Wendell–West*, 7 Wash. App. 90, 497 P.2d 1348 (1972). See cases cited in 27 Am.Jur.2d *Equitable Conversion* § 8 (1966). The net result is that the seller holds the legal title in trust for the buyer. *Jennisons v. Leonard*, 88 U.S. (21 Wall.) 302, 22 L.Ed. 539 (1874); *Dolton v. Cain*, 81 U.S. (14 Wall.) 472, 20 L.Ed. 830 (1871); *Larson v. Metcalf*, 201 Iowa 1208, 207 N.W. 382, 45 A.L.R. 344 (1926); *Bank of Santa Fe; Marks*. The doctrine of equitable conversion flows from the maxim that "equity regards and treats as done what, in good conscience, ought to be done." *Cooper v. Polayes*, 19 Conn.Supp. 353, 113 A.2d 599 (1955); *Cascade*.

Problems do arise in those jurisdictions espousing the theory of equitable conversion if the judgment is obtained against the seller, and a lien is sought against his interest rather than the interest of the buyer. In such a case, the seller's interest no longer being considered realty, and because his retention of legal title is limited to that of a trustee, some of the same concerns applicable with respect to a buyer under the common law rule now become pertinent with respect to the seller. See *Heider v. Dietz*, 234 Or. 105, 380 P.2d 619 (1963). In addition, the adoption of the equitable con-

version theory implicates other areas of substantive law, such as wills and trusts, in a way that creates potential collateral problems. *Cascade.* Consequently, a number of courts eschew the equitable conversion doctrine. *Cascade; Security Bank; Heider; In re Shareff's Estate,* 143 Pa.Super. 465, 17 A.2d 623 (1941).

Even though refusing to espouse the doctrine of equitable conversion, the same result is reached by several states that have held that their legislatures intended the interest of the buyer to be treated as real estate for the purpose of the attachment of a judgment lien. *Hammond v. Johnson,* 142 U.S. 73, 12 S.Ct. 141, 35 L.Ed. 941 (1891); *Cascade; Bank of Santa Fe; Collins,* 516 P.2d 677. This approach assumes an appropriate statutory justification.

■ Confronted with what essentially is a policy decision, we can agree with the result of those cases which find statutory justification for permitting the lien to attach, but perceive them to be distinguishable from this case either because of their facts or because of the difference in statutory language. We acknowledge a division of authority with respect to the question presented, *Warren,* 475 P.2d 775, but we reject the appellant's arguments and affirm the decision of the district court. Adoption of the rule urged by the appellant is within the province and domain of the legislature, and we should not make that decision for the legislative department of government.

*Cascade,* 567 P.2d 631, is one such case which refers specifically to particular Washington statutes and a legislative intent not attributable to our legislature. We commend the sound rejection by that court of the doctrine of equitable conversion and recognize the rationale the court followed although we do not adopt it. See *Guild Trust v. Union Pacific Land Resources Corp.,* 682 F.2d 208 (10th Cir.1982). Similarly, the Utah cases, *Lockhart Company v. Anderson,* 646 P.2d 678 (Utah 1982), and *Bill Nay,* 677 P.2d 1120, are not on point. In the first case, the equitable interest was voluntarily assigned as security for a loan. A subsequent assignee of the seller, following an apparent default on the part of the buyer, made up some payments due to a senior lien holder and then attempted to foreclose the buyer's equitable interest, similar to the foreclosure of a mortgage. The Utah court permitted the foreclosure of the equitable interest under those circumstances. The subject of an involuntary lien was not involved. In *Bill Nay,* the date for payment of the obligations of the contract had expired, and the issue was whether the trial court's determination that an interest remained was supported by the facts of that particular case. The question was whether an equitable interest still existed, not whether a lien could attach to such an interest.

Appellant urges the applicability of the rule which has evolved in New Mexico. Appellant notes that in *Warren,* 475 P.2d 775, the court ruled that the purchaser under an executory contract for the sale of real estate did not have an interest to which a judgment lien could attach. The rationale of that holding was a strict adherence to the common law. Appellant then points to *Collins,* 516 P.2d 677, in which the New Mexico court re-examined the issue and overruled the holding in *Warren.* The rationale adopted was that the New Mexico statutes were broad enough to encompass equitable interests. The reliance upon specific statutory construction results in *Collins* not being persuasive authority in this case. See *Guild Trust,* 682 F.2d 208. Other cases which appellant urges have much the same tone and tenor and do not afford additional substance to what we have said above.

We conclude that it is our obligation to determine the reach of the Wyoming statute based upon our perception of legislative intent. See *Cascade,* 567 P.2d 631, and *Collins.* We understand the Wyoming statute to be different from others, and each state independently determines the disposition of property within its boundaries. *Guild Trust.* Our inquiry is whether the language adopted by our legislature serves to abrogate the common law and provide an appropriate statutory justification permitting the attachment of a judgment lien to the equitable interest of a

buyer arising under contract for deed. We have found no prior case from our court which construes the term "land and tenements." The statutory language is to be strictly construed in the light of appellant's argument that it should be interpreted to abridge, or preempt, the common law. *Reliance Insurance Company v. Chevron U.S.A., Inc.*, 713 P.2d 766 (Wyo.1986); *Mahaney v. Hunter Enterprises, Inc.*, 426 P.2d 442 (Wyo.1967). The intention of our legislature must be discerned from the language of the statute, and we cannot read into the language what is not set forth. *Department of Revenue & Taxation of State of Wyoming v. Hamilton*, 743 P.2d 877 (Wyo.1987); *McArtor v. State*, 699 P.2d 288 (Wyo.1985); *Hurst v. State*, 698 P.2d 1130 (Wyo.1985).

The term "land" has been defined, in a general way, as encompassing "any ground, soil, or earth whatsoever; including fields, meadows, pastures, woods, moors, waters, marshes, and rock." Black's Law Dictionary, 789 (5th ed. 1979); *Reynard v. City of Caldwell*, 55 Idaho 342, 42 P.2d 292 (1935). It does connote a solid, tangible element. *In re West Great Falls Flood Control & Drain District*, 159 Mont. 277, 496 P.2d 1143 (1971). In a more limited sense, "land may denote the character and quality of the interest that an owner may have." *Holmes v. United States*, 53 F.2d 960, 963 (10th Cir.1931). It "may include any estate or interest in lands, either legal or equitable, as well as easements and incorporeal hereditaments." *Black's*; *Reynard*, *Cuff v. Koslosky*, 165 Okl. 135, 25 P.2d 290 (1933). *Black's Law Dictionary*, at 789, further reveals that "the land is one thing, and the estate in land is another thing, * * *." "Ordinarily, however, the term is used as descriptive of the subject of ownership and not the ownership." *Southern Pacific Company v. Riverside County*, 35 Cal.App.2d 380, 95 P.2d 688, 692 (1939). Despite some ambiguity, the composite of such definitions is that the term "land," in the context of our Wyoming statute, encompasses only tangible real property. That definition is compatible with legal title and not with an incorporeal executory interest.

We note that, at common law, a conveyancing litany developed of "lands, tenements and hereditaments." Apparently, that concept was intended to define, and was perceived as describing, the entire fee interest. It may not be without significance that our Wyoming statute refers only to "lands and tenements" and does not include the third term of "hereditaments." The legislature well may have diminished the phrase by design to exclude incorporeal interests.

We conclude that, despite the possibility of some equitable interest, the term "land" must contemplate the legal title and not encompass an equitable interest. In common acceptance, the term "tenement" pertains only to houses and buildings. In its original, proper, and legal sense, however, it signified anything that might be held, provided it was of a permanent nature. An equitable interest under a contract for deed, while it may be held, is inherently not of a permanent nature. The logic to be applied is that the rights of a buyer under a contract for deed are not included within the word "tenements." According to Black's Law Dictionary, 1316 (5th ed. 1979), at common law the term "tenements" was a synonym of "lands." Thus, it appears that the word "tenements" does not afford any particular basis to support the appellant's arguments.

It is our conclusion that, applying common definitions to a construction of the statutory phrase "lands and tenements" as it appears in § 1–17–302, W.S.1977, it is not broad enough to encompass the equitable interest of the buyer under a contract for deed. That is what the district court ruled, and we are in accord with that interpretation. We are unable to identify the appropriate justification to permit us to conclude that the legislature intended that the judgment lien attaching to "lands and tenements" would reach the equitable interest of the purchaser under an installment contract for the sale of land. We adhere to the historic common law approach and do not adopt the appellant's earnestly present-

ed arguments. The decision of the district court is affirmed.

URBIGKIT, J., filed a special concurrence.

URBIGKIT, Justice, specially concurring.

Although I concur with the decision of the majority on the basis presented by the litigants, this decision does not predetermine for me whether the same conclusion would result if a notice document had been recorded and that different status developed for appeal. Cf. *Willmschen v. Meeker*, 750 P.2d 669 (Wyo.1988), where the notice document was recorded. See *Low v. Sanger*, 478 P.2d 60 (Wyo.1970).[1]

The recognized purpose of the recorded document is to protect the installment contract buyers from loss of their purchase equity, *Dame v. Mileski*, 80 Wyo. 156, 340 P.2d 205 (1959), by evisceration from tax or judgment liens assessed against or a bona fide purchaser from the contract vendor as the recorded owner. See recording effect, *Condos v. Trapp*, 739 P.2d 749 (Wyo.1987); *Crozier v. Malone*, 366 P.2d 125 (Wyo. 1961); and *Torgeson v. Connelly*, 348 P.2d 63 (Wyo.1959). Unquestionably, a different character of protected interest is created for the purchaser by the recorded notice of sale. See W.S. 34–1–121 and 34–1–122. Cf. *Low*, 478 P.2d 60. With recordation of a properly executed document, a judgment against the vendor can no longer over-lien the buyer's purchase interest. Consequently, with that changed status, it does not necessarily follow that this different character of recorded property interest is not also differently impacted by a judgment lien impressed on the buyer.

In this case, it is unnecessary to make that judgment since the subject is not presented here by the record or briefs as a stated basis for reversal. Consequently, we are left with that issue for another day in other cases.

Consequently, I specially concur in the opinion and decision of the majority.

---

1. It is a general Wyoming real estate practice to either record a notice document or a copy of the installment contract itself.